Barbara F. SPALDING, Plaintiff,

v.

RELIANCE STANDARD LIFE INSURANCE COMPANY, Defendant.

Civ. A. No. 92–12463–GN.

United States District Court, D. Massachusetts.

Sept. 21, 1993.

---

Virginia M. Fettig, Medfield, MA, for plaintiff.

David W. Rosenberg, Hill & Barlow, Boston, MA, for defendant.

GORTON, District Judge.

Report and Recommendation accepted and adopted. ·

**REPORT AND RECOMMENDATION RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOCKET ENTRY # 9)**

**ORDER RE: PLAINTIFF, BARBARA F. SPALDING'S MOTION TO AMEND THE COMPLAINT *(DOCKET ENTRY # 14)***

Aug. 5, 1993.

BOWLER, United States Magistrate Judge.

Pending before this court are two motions, one for summary judgment (Docket Entry # 9) and one to amend the amended complaint (Docket Entry # 14). On June 21, 1993, this court held a hearing and took the motions (Docket Entry ## 9 & 14) under advisement.

## BACKGROUND

The instant litigation arises out of a denial of benefits to plaintiff Barbara F. Spalding ("plaintiff"), the beneficiary of a group life insurance policy issued by defendant Reliance Standard Life Insurance Company ("defendant") on the life of her deceased husband, Richard L. Spalding ("decedent"). Defendant issued the group policy to decedent former's employer, Merchants Bank of Boston ("the bank"). Decedent, a former bank employee, left the bank's employ because of a disability in November 1989 and died in August 1990.[1]

In the amended complaint, plaintiff brings the following counts: estoppel; breach of good faith and fair dealing; negligent misrepresentation; and violation of Massachusetts Laws chapter 93A, section 9 ("Chapter 93A"), grounded on an alleged violation of Massachusetts General Laws chapter 176D, sections 2 and 3. (Docket Entry # 8). In plaintiff's proposed amended complaint, she seeks leave to bring a fifth count for violation of the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 *et seq.* ("ERISA"). (Docket Entry # 14).

## I. *DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOCKET ENTRY # 9)*

Defendant moves for summary judgment on the basis that plaintiff's four counts are preempted by ERISA. Alternatively, defendant argues that it acted in accordance with the terms of the policy. (Docket Entry # 10). For purposes of summary judgment, this court finds the following facts.

At the time of his employment, decedent was covered under the policy noted *supra.* According to Carmine Pallotta ("Pallotta"), Senior Vice President of Merchants Bank of Boston, the bank provided all employees with a summary plan description of the policy. (Docket Entry # 12, Ex. A, pp. 35–36). The

---

1. Defendant acknowledges that on November 10, 1989, decedent was insured under its group life insurance policy ("the policy") with the bank. (Docket Entry # 2).

bank additionally provided all employees with a booklet describing the life and group disability insurance policy underwritten by defendant. (Docket Entry # 12, Ex. A, Pallotta, p. 35). According to William W. Wade ("Wade"), Secretary of Claims and Claim Litigation for defendant, defendant terminated the bank's coverage under the policy because of nonpayment of premiums on June 1, 1990.[2] (Docket Entry # 11).

According to the booklet,[3] the policy provided a life insurance benefit in the amount of three times an employee's annual salary, subject to a maximum amount of $330,000.[4] (Docket Entry # 11). The policy also contained a conversion privilege permitting eligible employees, upon termination of the policy, to convert the policy to an individual life insurance policy. The individual insurance policy provided for a life insurance benefit of "the lesser of" $5,000 or the amount as calculated under the group policy. (Docket Entry # 11, p. 00082).

The policy also allowed a totally disabled, eligible employee to apply for a waiver of premium. Under this provision, the amount of life insurance was the amount "in force at the time that total disability began." (Docket Entry # 11, p. 00084). This provision stated that defendant would extend the amount of insurance for a one year period after proof of total disability if, among other requirements, "you [the employee] become totally disabled prior to age 60." (Docket Entry # 11, p. 00084).

Plaintiff admits in her complaint that decedent was 63 on November 10, 1989, the day he apparently ceased working at the Bank because of his disability. There is no evidence in the record that decedent was under the age of 60 at the time he became disabled.[5]

Prior to the May 1990 bank insolvency and the June 1990 termination of the policy, Pallotta telephoned Frank McCarthy ("McCarthy"), an independent insurance broker handling the policy for the bank, and inquired about the continuation of life insurance benefits for disabled employees. After speaking with McCarthy, Pallotta discussed with decedent his coverage under the group policy. Pallotta testified that he spoke with decedent about the policy and the age limitation contained in the waiver of premium provision before decedent left the bank's employ.[6]

Thereafter, in the winter and spring of 1990, Pallota had additional conversations with McCarthy about the effect of the policy and the need to preserve the benefits of the three disabled bank employees. (Docket Entry # 12, Ex. A, Pallotta, pp. 70–72 & 74–75). From speaking with McCarthy, Pallotta understood that decedent would be eligible to apply for the waiver of premium.

McCarthy, an independent broker, spoke several times with Swain during the winter

---

2. In May 1990, the bank became insolvent and ceased operations. (Docket Entry # 12, Ex. A, Pallotta, p. 6). The Federal Deposit Insurance Corporation ("FDIC") was appointed Liquidating Agent. By letter addressed to plaintiff, the FDIC informed plaintiff that her claim, received on July 11, 1991, was disallowed as untimely. (Docket Entry # 12, Ex. H).

3. Neither the plan nor the summary plan description are contained in the record.

4. At the time of his disability, plaintiff alleges that decedent's annual salary was $43,000. (Docket Entry # 8).

5. By letter dated July 30, 1990, Reliance advised decedent that he was ineligible for the waiver of premium inasmuch as he became disabled at age 61. (Docket Entry # 17, Ex. 2).

6. Specifically, Pallotta testified that before decedent left the bank's employ in November 1989, Pallotta assured him that he would be covered and, accordingly, in lieu of early retirement, Pallotta advised decedent "to go on disability." (Docket Entry # 12, Ex. A, Pallotta, pp. 65–66). Pallotta based this assurance on a conversation with McCarthy who, according to Pallotta, had spoken with Kenneth Swain ("Swain"), Manager of defendant's Boston office. (Id., pp. 72–73). Such evidence, if offered to prove Pallotta's state of mind, would not be hearsay.

McCarthy remembers a conversation with Pallotta in November 1989 as to whether decedent should retire or go on disability. He also remembers that an unidentified assistant may have contacted defendant to determine the benefit calculations for decedent's pension. He does not, however, recall whether he and Pallotta discussed the waiver of premium provision. In addition, he does "not recall talking about waiver of premium in November" with Swain. (Docket Entry # 12, Ex. A, McCarthy, pp. 77–78).

and spring of 1990 about decedent and two other, disabled bank employees. According to McCarthy, Swain told him not to worry about the three employees and that they would be covered by the waiver of premium provision. McCarthy and Swain did not discuss the effect of the age limitation as it applied to decedent. Rather, the two discussed the three disabled employees collectively as a group. (Docket Entry # 12, Ex. A, McCarthy; Docket Entry # 17, Ex. C). According to Swain, he remembers speaking with McCarthy about the waiver of premium provision with respect to the three disabled employees. He does not recall the specifics of the conversations. (Docket Entry # 12, Ex. A, Swain).

By letter dated June 29, 1990, McCarthy submitted the completed waiver of premium applications for the three disabled employees to Swain. By letter dated July 27, 1990, Bobbie Barone ("Barone"), a claims examiner for defendant, informed decedent that his application was approved. By letter dated July 30, 1990, Barone told decedent the July 27 letter was in error and that his application was denied inasmuch as he had not been totally disabled before reaching the age of 60. (Docket Entry # 12, Ex. C & D; Docket Entry # 17, Ex. D). Plaintiff testified that she could not understand why an insurance company would send one letter allowing a waiver and another letter rescinding the waiver. (Docket Entry # 17, Ex. A).

In the July 30, 1990 letter, Barone additionally noted that decedent had certain conversion privileges and, if interested, should apply to convert his certificate. (Docket Entry # 12, Ex. D; Docket Entry # 12, Ex. D). As previously noted, the conversion privilege permitted an eligible employee to convert his coverage to an individual life insurance policy with coverage limited to the lesser of the amount of either $5,000 or the amount as calculated under the group policy.

By letter dated August 13, 1990, McCarthy wrote to defendant enclosing decedent's completed application for a conversion. The cover letter stated that the amount of the conversion was three times decedent's annual salary. (Docket Entry # 12, Ex. E; Docket Entry # 12, Ex. D). By letter dated Sep-

tember 5, 1990, Jane Hopson ("Hopson"), Manager of [D]efendant's Life and Accident and Death and Disability Claims Department, wrote to plaintiff's attorney advising her that decedent was not eligible for waiver of premium and the resulting higher death benefit because he was 63 at the time of his disability. Rather, decedent's coverage, should he elect to convert his policy, would be $5,000. Hopson further acknowledged the error contained in the July 27, 1990 letter and therefore extended the conversion period. (Docket Entry # 12, Ex. F; Docket Entry # 17, Ex. E). Plaintiff's attorney subsequently filed a claim with the FDIC, Liquidating Agent of the bank, which was denied as time barred under the 90 day time limit provided for filing administrative claims. 12 U.S.C. § 1821(d). The instant litigation ensued.

## DISCUSSION

■ Summary judgment is permissible when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Inferences are drawn in favor of plaintiff, the nonmoving party. *Space Master International, Inc. v. City of Worcester*, 940 F.2d 16 (1st Cir.1991); *Herbert W. Price v. General Motors Corporation*, 931 F.2d 162 (1st Cir.1991) (record viewed in light most favorable to nonmoving party).

■ In deciding whether a factual dispute is genuine, this court must determine whether "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *accord Aponte–Santiago v. Lopez–Rivera*, 957 F.2d 40, 41 (1st Cir.1992) (citing Anderson). "A fact is 'material' if it might affect the outcome of the suit under the governing substantive law." *Beck v. Somerset Technologies*, 882 F.2d 993 (5th Cir.1989) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

■ Defendant argues that plaintiff's counts for estoppel, breach of good faith,

negligent misrepresentation and chapter 93A are preempted by ERISA as a matter of law. This court initially finds that the group policy at issue is an employee benefit plan within the meaning of ERISA. *See* 29 U.S.C. § 1002(3); *see also Wickman v. Northwestern Mutual Life Insurance Company,* 908 F.2d 1077, 1082–1083 (1st Cir.), *cert. denied,* 498 U.S. 1013, 111 S.Ct. 581, 112 L.Ed.2d 586 (1990) (listing constituents and quoting *Donovan v. Dillingham,* 688 F.2d 1367, 1370 (11th Cir.1982)).

Congress enacted ERISA in 1974 in order "to comprehensively and exclusively regulate employee benefit plans." *Best v. AGFA Compugraphic,* 1992 WL 390713 at *1 (D.Mass. December 9, 1992) (cause of action, interpreted as one for improper claim settlement practices under chapter 93A, preempted by ERISA). The congressional policy choices reflected by including certain remedies while excluding others "would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA." *Nash v. Trustees of Boston University,* 946 F.2d 960, 964 & n. 8 (1st Cir.1991) (also noting policy of uniformity served by ERISA).

Consequently, it is generally true that state law claims related to employee benefits are preempted under ERISA. Section 1144(a) states that ERISA "shall supersede any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan." 29 U.S.C. § 1144(a) (emphasis added). Moreover, preemption is "broadly construed in light of the objective of Congress to establish regulation of pension plans as exclusively a federal concern." *Framingham Union Hospital v. Travelers Insurance Company,* 721 F.Supp. 1478, 1490 (D.Mass. 1989) (citing *Pilot Life Insurance Company v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987)). While not limitless, ERISA preemption is therefore extensive. And, to the extent that grey areas exist, the policy rationale permeating ERISA "afford sound guidance" in assessing the scope of preemption. *McCoy v. Massachusetts Insti-*

*tute of Technology,* 950 F.2d 13, 17–18 (1st Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1939, 118 L.Ed.2d 545 (1992).

Plaintiff nevertheless relies on the "savings clause" contained in 29 U.S.C. § 1144(b)(2)(A) wherein state laws regulating insurance are saved from preemption. This provision is, as noted by plaintiff, modified by the "deemer clause" which states that:

> [n]either an employee benefit plan, nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer, bank, trust company or investment company or to be engaged in the business of insurance or banking for any purposes of any law of any state purporting to regulate insurance companies, insurance contracts, banks, trust companies or investment companies.

29 U.S.C. § 1144(b)(2)(B). Although it is sometimes difficult to distinguish state law claims grounded in insurance and relating solely to an insurance company funding the plan from state law claims grounded on the plan itself, the instant dispute falls within the latter category. Insurance coverage which forms part of an ERISA plan is, for purposes of uniformity, properly regulated under ERISA. *See Wickman v. Northwestern Mutual Life Insurance Company,* 908 F.2d at 1082.

Plaintiff's claims relate to a dispute regarding death benefits under an ERISA plan and a miscommunication between individuals at the insurance company funding the plan, the independent insurance broker, bank employees and decedent. The miscommunication is essential to plaintiff's cause of action and intimately relates to the ERISA plan. To state the obvious, plaintiff's claim directly affects and concerns the administration of death benefits under the plan.

Plaintiff's situation is therefore not analogous to the situation involved in *Drinkwater v. Metropolitan Life Insurance Company,* 846 F.2d 821 (1st Cir.1988), *cert. denied,* 488 U.S. 909, 109 S.Ct. 261, 102 L.Ed.2d 249.[7] In *Drinkwater,* the plaintiff's state law claim for emotional distress was not preempted inasmuch as the insurance company/ERISA em-

---

7. Plaintiff did not rely on *Drinkwater* in her op- position pleading.

ployer was merely using the means of withholding benefits to force a recalcitrant employee to return to work. *Drinkwater v. Metropolitan Life Insurance Company*, 846 F.2d at 826.

 As noted by the First Circuit in a later opinion, common law tort claims for the improper processing of a claim for benefits under an ERISA regulated insurance policy are preempted. *Wickman v. Northwestern Mutual Life Insurance Company*, 908 F.2d at 1082. Plaintiff's claims for estoppel, breach of good faith and negligent misrepresentation are therefore preempted. *See Cromwell v. Equicor–Equitable HCA Corporation*, 944 F.2d 1272, 1276 (6th Cir.1991), *cert. dismissed*, —— U.S. ——, 113 S.Ct. 2, 120 L.Ed.2d 931 (1992) (collecting cases wherein state claims for breach of contract, promissory estoppel, negligence and misrepresentation of benefits were preempted by ERISA); *Samos v. Dean Witter Reynolds*, 772 F.Supp. 715, 718 & 720 (D.R.I.1991) (state law negligence claim and extra-contractual compensatory damages claim preempted in breach of fiduciary action); *see also Nash v. Trustees of Boston University*, 946 F.2d at n. 8 (1st Cir.1991) (citing Sixth Circuit case where, similar to the case at bar, ERISA preempted promissory estoppel, negligence and breach of good faith claims).

 Turning to plaintiff's fourth count, whether a claim under "chapter 93A is preempted by ERISA depends upon the circumstances of the case." *Best v. AGFA Compugraphic*, 1992 WL 390713 at *2 (collecting cases in this district). Similar to the claim in *Best*, plaintiff's chapter 93A claim closely relates to the plan itself inasmuch as the alleged misrepresentation involves an alleged nonpayment of death benefits and misunderstanding concerning coverage for death benefits.

Moreover, the possibility of providing remedies for double and treble damages under chapter 93A directly undermines the remedies expressly provided by Congress for denial of benefits claims under section 1132(a)(1)(B). Accordingly, courts uniformly deny claims for extra-contractual or punitive damages under ERISA. *See, e.g., Bishop v. Osborn Transportation, Inc.*, 838 F.2d 1173,

1174 (11th Cir.), *cert. denied*, 488 U.S. 832, 109 S.Ct. 90, 102 L.Ed.2d 66 (1988); *Moffitt v. Blue Cross & Blue Shield of Mississippi*, 722 F.Supp. 1391, 1394 (N.D.Miss.1989) (punitive and extra-contractual damages disallowed in denial of benefits action); *Bova v. American Cyanamid Co.*, 662 F.Supp. 483, 489 (N.D.Ohio 1987) (collecting cases); *Bone v. Association Management Services, Inc.*, 632 F.Supp. 493, 496 (S.D.Miss.1986); *cf. Samos v. Dean Witter Reynolds*, 772 F.Supp. 715, 718 & 720 (D.R.I.1991) (state law negligence claim and extra-contractual compensatory damages claim preempted in breach of fiduciary action).

Summary judgment as to plaintiff's four claims for relief under her amended complaint is therefore appropriate inasmuch as these claims are preempted by ERISA. The remaining issue to resolve is whether to allow plaintiff leave to amend her amended complaint to bring a fifth count for an alleged breach of fiduciary duty under ERISA.

## II. *PLAINTIFF, BARBARA F. SPALDING'S MOTION TO AMEND THE COMPLAINT (DOCKET ENTRY # 14)*

Plaintiff moves for leave to add a claim for breach of fiduciary duty under ERISA. (Docket Entry # 14). In her proposed amended count, plaintiff realleges the factual allegations in her prior amended complaint and contends that:

> [d]efendant breached its fiduciary duty to [decedent and plaintiff] by first granting the waiver of premium and then denying such waiver, by refusing to honor the advice given by its agent, Swain, and by leading them to believe that the policy would be converted to the full amount, but ultimately denying such conversion, thereby causing [plaintiff] financial loss and great emotional distress.

Plaintiff seeks "damages together with interests (sic), costs and attorneys fees ... [and] other relief as the court deems just." (Docket Entry # 14).

Relying on certain deposition transcripts, defendant argues that it was neither a fiduciary under the plan nor did it breach any fiduciary duty imposed thereunder. Defen-

dant contends that it was not the plan administrator and therefore had no duty to provide decedent with a summary of the plan's provisions or to explain the plan's provisions. Defendant further submits that it had no discretion in enforcing the mandatory provisions of the plan. (Docket Entry ## 10 & 18).

Defendant therefore contends that plaintiff's amendment is futile. Defendant additionally claims that plaintiff's motion for leave to amend is an inappropriate and ineffectual attempt to avoid summary judgment.[8] (Docket Entry # 18).

## DISCUSSION

▮▮▮▮▮ Fed.R.Civ.P. 15(a) provides that leave to amend a pleading "shall be freely given when justice so requires." Futility constitutes an adequate basis to deny a proposed amendment. *Demars v. General Dynamics Corp.*, 779 F.2d 95, 99 (1st Cir.1985); *Liberty Leather Corp. v. Callum*, 653 F.2d 694, 700 (1st Cir.1981). The standard of review, however, is different than that employed under a summary judgment motion. A proposed amendment is futile if it cannot survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), Fed. R.Civ.P. *Correa–Martinez v. Arrillaga–Belendez*, 903 F.2d 49, 59 (1st Cir.1990); *see also Emory v. Texas State Bd. of Medical Examiners*, 748 F.2d 1023 (5th Cir.1984); *Marx v. Centran Corp.*, 747 F.2d 1536 (6th Cir.1984). Dismissal under Rule 12(b) is permissible only if it appears "beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Haines v. Kerner*, 404 U.S. 519, 520–521, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972). Thus, when testing the legal sufficiency of an amendment, denial of the proposed amendment is proper if there is no set of facts under the amendment constituting a valid claim. *See* 3 James Wm. Moore & Richard D. Freer *Moore's Federal Practice* ¶ 15.08[4] (1993).

8. This court is not persuaded by this latter argument.

9. Section 1132(a)(2) provides, in pertinent part, that "[a] civil action may be brought— . . . by the

Plaintiff, as the beneficiary under the policy, fails to note under which section of ERISA she brings her claim for relief. The civil enforcement provisions of ERISA are set forth in 29 U.S.C. § 1132(a)(1)–(6). *See Oscar A. Samos, M.D. v. Dean Witter Reynolds*, 772 F.Supp. 715, 717 (D.R.I.1991) (discussing various causes of actions available to beneficiary). While plaintiff is not required to invoke a precise statute, her neglect complicates this court's review of the motion. *See Id.* at 717.

Plaintiff also fails to allege that defendant was a fiduciary under the plan. Rather, plaintiff puts forth a cursory allegation that defendant breached its fiduciary duty. *See Best v. AGFA Compugraphic*, 1992 WL 390713 at *6 (dismissing state law claims as preempted and, noting plaintiff's bare allegations, denying leave to amend to add ERISA claim). Mindful of the liberal standard afforded amendments, this court will nevertheless review plaintiff's ERISA claim.

As a beneficiary, plaintiff may bring a civil action under sections 1132(a)(2), 1132(a)(1)(B) and 1132(a)(3). *Id.* at 718. The most logical section, based on a reading of plaintiff's proposed amendment, is section 1132(a)(2) which expressly incorporates section 1109 dealing with a breach of fiduciary duty.[9]

▮▮▮▮ Section 1109, entitled "Liability for breach of fiduciary duty," makes a fiduciary:

> personally liable to make good to such plan any losses to the plan resulting from each . . . breach [of fiduciary duty], and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

29 U.S.C. § 1109(a) ("section 1109"). ERISA establishes that a person is a fiduciary to the extent he exercises discretionary authority over the management or administration of a

Secretary, or by a participant, beneficiary, or fiduciary for appropriate relief under section 1109 of this title." 29 U.S.C. § 1132(a)(2).

plan.[10] In addition, while nonfiduciaries acting unilaterally and even negligently are not liable under section 1109, courts have held nonfiduciaries liable for "knowing collaboration in a breach of fiduciary duty by an ERISA fiduciary." *Framingham Union Hospital v. Travelers Insurance Company,* 721 F.Supp. at 1488.

■ Under section 1132(a)(2), however, plaintiff is not entitled to compensatory and punitive damages. Damages are awarded for the benefit of the plan rather than the benefit of the individual employee. *Drinkwater v. Metropolitan Life Insurance Company,* 846 F.2d at 824; *see also Massachusetts Mutual Life Insurance Company v. Russell,* 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985).

■ In opposition to amendment, defendant argues that it was neither a fiduciary nor did it breach any fiduciary duty. Solely for purposes of allowing leave to amend, this court disagrees.

The extent of defendant's duties and Swain's relationship to the bank as well as the role of the bank in administering the plan remains unclear. This court cannot unequivocally find that plaintiff can prove no set of facts entitling her to relief under ERISA. Neither a summary of the plan nor the plan itself are presently before this court. This court is therefore at a disadvantage in assessing the extent of Swain's discretionary authority despite the somewhat clear language pertaining to the age limitation. The booklet describing employee benefits fails to designate either an administrator[11] or a fiduciary. Thus, while the evidence weighs heavily in defendant's favor, it is not the function of this court on this motion to weigh the evidence. In light of the standard applicable to motions to amend, this court will allow plaintiff leave to amend her amended complaint to add an ERISA claim.

■ In light of the bifurcated amended complaint as it presently exists in the record and the amorphous nature of the ERISA claim as presently plead (Docket Entry ## 8 & 14), however, this court directs plaintiff to submit an amended complaint in the form of a single document on or before September 7, 1993. ERISA litigation is complex and plaintiff should be required to specify an actual legal theory. Plaintiff should provide defendant with fair notice of her ERISA cause of action. *See Boston & Maine Corporation v. Town of Hampton,* 987 F.2d 855, 865 & 867 (1st Cir.1993). In its discretion, this court therefore instructs plaintiff to identify the pertinent statutory section under which she brings her ERISA cause of action. She should also describe the plan, expressly identify the fiduciary and the actions taken by the fiduciary in breach of his fiduciary duty.[12]

## CONCLUSION

■ In accordance with the foregoing discussion, this court RECOMMENDS[13] that defendant's motion for summary judgment (Docket Entry # 9) be ALLOWED thereby dismissing plaintiff's four state law claims as preempted under ERISA. Plaintiff's motion to amend (Docket Entry # 14) is ALLOWED. Plaintiff shall file an amended complaint grounded on ERISA in accordance

---

10. ERISA provides that a person is a fiduciary with respect to a plan "to the extent (i) he exercises discretionary authority or discretionary control respecting management of such plan ... or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A).

11. It does, however, refer to defendant and the "Plan Administrator" alternatively using the conjunction "or." (Docket Entry # 11, p. 00083).

12. As noted in *Best,* the plaintiff's failure to describe the plan or the actions of the plan administrator to support her bare allegation of an ERISA violation necessitated denial of the mo-

tion for leave to amend. *Best v. AGFA Compugraphic,* 1992 WL 390713 at *6.

13. Any objections to this Report and Recommendation must be filed with the Clerk of Court within ten days of receipt of the Report and Recommendation to which objection is made and the basis for such objection. Any party may respond to another party's objections within ten days after service of the objections. Failure to file objections within the specified time waives the right to appeal the district court's order. *United States v. Escoboza Vega,* 678 F.2d 376, 378–79 (1st Cir.1982); *United States v. Valencia-Copete,* 792 F.2d 4, 6 (1st Cir.1986).

with this Order on or before September 7, 1993.