Richard DRINKWATER, et al.,
Plaintiffs, Appellants,

v.

METROPOLITAN LIFE INSURANCE
CO., Defendant, Appellee.

No. 87–1533.

United States Court of Appeals,
First Circuit.

Heard Oct. 6, 1987.

Decided May 18, 1988.

Paul G. Holian, Boston, Mass., with whom Charles J. Yeager was on brief, for plaintiffs, appellants.

William J. Toppeta with whom James M. Lenaghan and David J. Larkin, Jr., New York City, were on brief, for defendant, appellee.

Before COFFIN and TORRUELLA, Circuit Judges and BROWN,* Senior Circuit Judge.

JOHN R. BROWN, Senior Circuit Judge.

This is an appeal from a summary judgment rendered in favor of Metropolitan Life Insurance Co. (Metropolitan) and against the Drinkwaters, Richard and Judith, on claims arising out of Richard Drinkwater's entitlement to disability benefits under a qualified ERISA-plan. Count I, seeking compensatory and punitive damages for breach of fiduciary duty, was properly dismissed as an extra-contractual claim not authorized by ERISA. Count II, seeking compensatory damages for the difference between what Drinkwater received and what he claims he should have received, was properly dismissed for failure to exhaust administrative remedies. Count III, brought by Judith Drinkwater as a pendent state law claim, was improperly dismissed on preemption grounds. Nonetheless, we affirm the grant of summary judgment on this claim because, under Massachusetts law, Judith Drinkwater has failed to state a claim upon which relief can be granted.

*Of the Fifth Circuit, sitting by designation.

### Metropolitan in the thick of things—Employer or ERISA–Insurer

This case presents Metropolitan in the somewhat unusual posture of both employer and ERISA-insurer. Richard Drinkwater had worked for Metropolitan for over thirty years as an insurance salesman when, on October 12, 1975, he suffered a heart attack. Metropolitan placed him on temporary disability status immediately, and began paying temporary disability insurance benefits to him the following week. His condition persisted. At the expiration of the one-year period covered by Metropolitan's temporary disability plan, Drinkwater was placed on permanent disability status under the plan then in effect (the "old plan"), and Metropolitan commenced paying those benefits to him in October 1976.

Metropolitan developed a new and more generous permanent disability plan which became effective January 1, 1976 (the "new plan"). Drinkwater claims he was informed by a representative of Metropolitan that he would be eligible for the higher benefits available under the new plan. Nonetheless, when Drinkwater was placed on permanent disability in October 1976, he received benefits under the old plan.

### Metropolitan Has Doubts

From July 1976 to July 1982, Metropolitan paid benefits to Drinkwater under the terms of the old plan. So far as we have been able to determine, at no time during that six year period did Drinkwater contest the payment of benefits under the old plan. In July 1982, Metropolitan requested that Drinkwater submit to a medical examination to be performed by Metropolitan's own doctors.

Two physicians examined Drinkwater at that time. The first, Dr. Goldman, stated that he found "no objective data to corroborate" Drinkwater's statements that he had been diagnosed as having coronary artery disease.[1] Subsequently, Dr. Zager, a

1. In the same letter, however, Goldman stated that he had been unable to obtain Drinkwater's medical records from Massachusetts General

psychiatrist, examined Drinkwater[2] and concluded that (i) Drinkwater should not be ordered to return to work without first checking with his cardiologist; (ii) the stress of an insurance salesman's job was beyond Drinkwater's emotional capacity; and (iii) Drinkwater should receive a vocational evaluation to determine what other sort of work, if any, Drinkwater was capable of performing.

### Metropolitan Determines to Terminate

By letter of April 8, 1983 Metropolitan, based on the reports of Drs. Goldman and Zager, advised Drinkwater that his disability status had been re-evaluated. Because "the independent medical examiners failed to find objective evidence" of his disability, Drinkwater's benefits would not be continued beyond April 30, 1983. The letter concluded with a "suggestion" that Drinkwater contact Metropolitan's regional sales manager "to discuss ... future plans and employment status."

On April 25, 1983, Drinkwater contacted Metropolitan and was advised that he could send information to refute Metropolitan's determination that he was no longer eligible for permanent disability benefits. Drinkwater supplied no additional information to Metropolitan, and did not request a review of the determination to discontinue his disability benefits. He contends, however, that he was orally advised by unspecified officers of Metropolitan that "if he did not return to work on May 2, 1983, as directed, that he would be fired ... with total forfeiture of all retirement, health, and other employee benefits."

### May 2, 1983—An Eventful Day

Drinkwater did return to work on May 2, 1983, and suffered a second heart attack that very same day. Following that heart attack, Metropolitan restored Drinkwater's disability benefits, under the terms of the old plan, pursuant to the "recurrence of disability" provision of that plan. Under Metropolitan's interpretation of the plan, this second heart attack was a recurrence of a condition which manifested itself prior to January 1, 1976. As a recurrence of a preexisting condition, Drinkwater was only entitled to benefits available at the time this condition first was manifested, benefits under the old plan. Drinkwater took early retirement effective October 1, 1985, and Metropolitan, as employer, not ERISA insurer, began paying Drinkwater retirement benefits.[3]

### Litigation Sets In

Drinkwater and his wife Judith filed their original complaint in the District Court on December 4, 1985, asserting claims under various provisions of ERISA as the sole basis for federal jurisdiction. Count I claimed compensatory and punitive damages pursuant to 29 U.S.C. § 1132(a)(3)[4] for breach of fiduciary duty to Drinkwater imposed by 29 U.S.C. §§ 1104 and 1140 (ERISA §§ 404 and 510), in that Metropolitan's acts constituted attempted interference with Drinkwater's "attainment of his vested right to retirement." Compensatory damages were sought in the amount of $5 million, punitive damages in the amount of $10 million and attorney's fees.

---

Hospital, and consequently was unable to make a definite diagnosis.

2. Also without benefit of the medical records.

3. Drinkwater's retirement benefits are uncontested. There is no indication whether they were ERISA-governed or part of a separate employment agreement.

4. 29 U.S.C. § 1132 provides in part:
   (a) A civil action may be brought—
     (1) by a participant or beneficiary—

    .     .     .     .     .

  (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;
  (2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;
  (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

Count II sought compensatory damages pursuant to 29 U.S.C. § 1132(a)(3) equal to the difference in the disability benefit payments payable under the new plan, and those actually paid to Drinkwater after May 2, 1983, which were calculated on the basis of the old plan,[5] a total of $300,000. He also sought punitive damages in the amount of $2 million, plus attorney's fees.

In Count III, Judith Drinkwater, in a pendent state law claim, sought compensatory damages under Massachusetts state law for her emotional distress because her husband was forced to return to work under circumstances that made it dangerous to his physical and mental health for him to do so. She sought $500,000, plus attorney's fees.

### Metropolitan the Victor

Thereafter the District Court granted summary judgment for Metropolitan on all three claims, ruling that (i) on the basis of *Pilot Life v. Dedeaux*[6] and *Metropolitan Life v. Taylor*,[7] ERISA excluded the extra-contractual remedies sought in the first claim; (ii) exhaustion of administrative remedies was required but not satisfied for the relief requested in Count II; and (iii) the state law claim in Count III was preempted by ERISA as interpreted in *Dedeaux* and *Taylor*.

From that judgment, the Drinkwaters appeal.

### I. Extra-contractual Damages

The compensatory and punitive damages sought by Richard Drinkwater are extra-contractual in that this relief is not within the terms of Metropolitan's ERISA-governed benefit plan. Richard Drinkwater has asserted his entitlement to relief based on Metropolitan's bad faith and malicious conduct in misrepresenting benefits due Drinkwater and in attempting to constructively discharge him, all in violation of Metropolitan's fiduciary duty under ERISA. The Drinkwaters concede that the extra-contractual damages they seek are not expressly authorized by ERISA,[8] and consequently contend that these damages come within the statutory grant of "other appropriate equitable relief" under § 1132(a)(3)(B).[9] It is clear that the comprehensive provisions of ERISA were intended by Congress to be the exclusive remedy for beneficiaries under ERISA-authorized plans.[10] In light of that history, we cannot conclude that Congress intended to authorize any form of relief other than what was expressly granted. "Other appropriate equitable relief" should be interpreted to mean what it says—declaratory or injunctive relief, not compensatory and punitive damages.

In *Massachusetts Life Ins. Co. v. Russell*,[11] a case holding that ERISA's

---

**5.** Drinkwater does not contest the payments made under the old plan prior to May 2, 1983. He apparently accepts the determination by Metropolitan that the benefits to which he was entitled throughout his initial disability were properly calculated under the old plan. He claims, however, that his return to work after termination of his initial disability vested his rights to benefits under the new plan, regardless of whether the heart attack suffered on May 2, 1983 was a continuation of his previous disability.

**6.** *Pilot Life Ins. Co. v. Dedeaux*, —— U.S. ——, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987).

**7.** *Metropolitan Life Ins. Co. v. Taylor*, —— U.S. ——, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987).

**8.** While breach of fiduciary duty is a recognized statutory violation under 29 U.S.C. § 1104, the extra-contractual *damages* sought by Drinkwater are not authorized by ERISA in favor of plan

beneficiaries. *See Massachusetts Life Ins. Co., v. Russell*, n. 11, *infra.*

**9.** *See* n. 4, *supra.*

**10.** In *Dedeaux*, involving only state law claims, the Court stated: "[T]he detailed provisions of § [1132(a)] set forth a comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans. The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA, 107 S.Ct. at 1556.

**11.** 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985).

§ 1109(a) [12] breach of fiduciary duty provision provided no express or implied authority for an award of punitive damages to a beneficiary, the Court stated: "The six carefully integrated civil enforcement provisions found in § [1132(a)] of the statute as finally enacted ... provide strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly." [13]

In *Russell,* the Court concluded that Congress had created liability for breach of fiduciary duty only in favor of the *plan,* and *not* in favor of individual beneficiaries. Following an examination of the legislative history of ERISA, the Court declined to imply a private remedy in favor of plan beneficiaries.

■ While *Russell* was limited to remedies available under § 1132(a)(2) for violations of § 1109 and "expressly reserve[d] the question whether extra-contractual damages might be one form of 'other appropriate relief' under § [1132(a)(3)]," [14] we conclude, as have the Fourth, Fifth, Sixth, Seventh, Eighth and Ninth Circuits,[15] that extra-contractual damages are unavailable under § 1132(a)(3). We give our transcontinental imprimatur to the Ninth Circuit's simple, appealing expression of that conclusion: "[I]t appears that Congress used the word 'equitable' [in § 1132(a)(3)] to mean what it usually means—injunctive or declaratory relief".[16]

## II. Exhaustion of Plan Remedies

■ The District Court granted summary judgment for Metropolitan on Count II of Drinkwater's complaint [17] because Drinkwater failed to exhaust the administrative remedies provided by ERISA. ERISA requires employee benefit plans to provide any participant whose claim for benefits is denied with an opportunity for review by the fiduciary denying the claim.[18] All Metropolitan employees were provided with a "Statement of Rights under the Employee Retirement Income Security Act." The statement informed participants of their right, as required by ERISA, to have their "claim reviewed and reconsidered upon request." [19]

It is undisputed that Richard Drinkwater failed to utilize the review procedure provided by Metropolitan, saving his complaints for the litigation process rather than the review procedure. As ERISA fails expressly to provide for exhaustion of administrative remedies for statutory claims, Drinkwater asserts that this Court should not require exhaustion. In addition, he makes the accusation, unsupported by facts, that the review procedure provided by Metropolitan was a meaningless exercise, requiring Metropolitan to adjudicate "the legal consequences of its own fraud and breach of contract," and that there was "not the slightest possibility that the plan administrator could be objective, unbiased

---

**12.** 29 U.S.C. § 1109 provides:

(a) Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

**13.** *Id.* at 146, 105 S.Ct. at 3093, 87 L.Ed.2d at 96.

**14.** *Russell,* 473 U.S. at 157, 105 S.Ct. at 3098, 87 L.Ed.2d at 113 (*Brennan,* J., concurring).

**15.** *Sokol v. Bernstein,* 803 F.2d 532 (9th Cir. 1986); *Sommers Drug Stores Co. v. Corrigan*

*Enterprises,* 793 F.2d 1456 (5th Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 884, 93 L.Ed.2d 837 (1987); *Powell v. Chesapeake and Potomac Tel. Co.,* 780 F.2d 419 (4th Cir.1985), *cert. denied,* 476 U.S. 1170, 106 S.Ct. 2892, 90 L.Ed.2d 980 (1986); *Varhola v. Doe,* 820 F.2d 809 (6th Cir.1987) (punitive damages unavailable); *Kleinhans v. Lisle Sav. Profit Sharing Trust,* 810 F.2d 618 (7th Cir.1987).

**16.** *Sokol v. Bernstein,* 803 F.2d 532, 538 (9th Cir.1986).

**17.** Count II sought compensatory damages equal to the difference between benefits paid and benefits which allegedly should have been paid.

**18.** 29 U.S.C. § 1133(2).

**19.** *See* Record, p. 131.

and act in the best interest of the beneficiary" in reviewing Drinkwater's claim.

Drinkwater does not dispute that exhaustion is required for claims which are purely contractual.[20] His argument, rather, is that his claim for past due benefits is based not on the contract but on the violation of his statutory rights under ERISA and is thus not subject to the exhaustion requirement. Metropolitan is correct in its counter argument, that this is a simple contract claim artfully dressed in statutory clothing. If we were to allow claimants to play this characterization game, then the exhaustion requirement would be rendered meaningless.

Traditional exhaustion principles do include an exception for instances "when resort to the administrative route is futile or the remedy inadequate." [21] For this exception to apply, however, those in pursuit must show that the administrative route is futile or the remedy inadequate. A blanket assertion, unsupported by any facts, is insufficient to call this exception into play.

It is undisputed that Metropolitan's plan provided the required review procedure. Metropolitan contends that this procedure, if employed, would produce a full and fair review and an appropriate disposition of Drinkwater's claim. Drinkwater produced no evidence to show, or even raise the point, that resort to this review would have been futile, or that the administrative remedy sought would have been inadequate.

### III. State–Based Pendent Claim—Preemption?

Judith Drinkwater's complaint addresses the emotional distress she suffered because her husband was forced to return to work at a time when doing so posed a serious threat to his physical and emotional health. Despite the claim being a distinct state law claim, Metropolitan succeeded below in convincing the trial court that it arose from the terms of the employee benefit plans, and thus the claim is preempted by ERISA.

The problem with Metropolitan's interpretation is that Judith Drinkwater is not a person for whom ERISA provides a remedy. Under *Dedeaux, supra,* a state law claim is preempted if it relates to an employee benefit plan. Mrs. Drinkwater's claim does not relate to her husband's ERISA plan. She simply claims that Metropolitan's outrageous conduct in pressuring her husband to return to work foreseeably caused her emotional distress. The fact that the *means* Metropolitan used to pressure Richard Drinkwater—threatening to withhold his disability benefits—related to an ERISA plan does not mean that Judith Drinkwater's claim so relates. In order to recover for emotional distress, Judith Drinkwater need not show anything at all about ERISA or the Plan. Summary judgment on preemption grounds was therefore inappropriate.

Although her emotional distress claim is not preempted, we nonetheless affirm the grant of summary judgment in Metropolitan's favor on this claim. Under Massachusetts law, the direct object of outrageous conduct may recover without proof of physical injury.[22] However, one who is not the direct object of tortious conduct can recover for emotional distress only if he or she has also suffered "substantial physical injury." [23] As the complaint alleges, and the record reflects, only that Richard Drinkwater was the target of the outrageous conduct, and neither alleges, nor does the record reflect, any physical injury to Judith Drinkwater, she has failed to state a claim.

### Conclusion

The District Court correctly dismissed Count I as ERISA provides the exclusive

**20.** *Barrowclough v. Kidder, Peabody & Co.,* 752 F.2d 923 (3rd Cir.1985); *Amato v. Bernard,* 618 F.2d 559 (9th Cir.1980).

**21.** *Amato v. Bernard,* 618 F.2d 559, 568 (9th Cir.1980), quoting *Winterberger v. General Teamsters Auto Truck Drivers and Helpers Local Union 162,* 558 F.2d 923, 925 (9th Cir.1977).

**22.** *Agis v. Howard Johnson Co.,* 371 Mass. 140, 355 N.E.2d 315 (1976); *Dziokonski,* 375 Mass. 555, 380 N.E.2d 1295 (1978).

**23.** *Dziokonski, supra; Agis, supra.*

vehicle for redress of disputes over employee benefit plans. Extra-contractual damages are unauthorized by ERISA. Count II was likewise correctly dismissed for failure to exhaust administrative remedies. Count III, dealing solely with pendent state law claims, was incorrectly dismissed on preemption grounds. We affirm Count III as Judith Drinkwater has failed to state a claim upon which relief can be granted.

AFFIRMED.