**Edward FREEMAN, Plaintiff,**

v.

**METLIFE GROUP, INC., Defendant.**

**Civil Action No. 08–10864–NMG.**

United States District Court,
D. Massachusetts.

Oct. 17, 2008.

Victoria Woodin Chavey, Day, Berry & Howard LLP, Jeffrey A. Fritz, Day Pitney LLP, Hartford, CT, for Defendant.

Louis Movitz, Packer and Movitz, P.C., Wellesley Hills, MA, Alan L. Packer, Packer and Movitz, P.C., Boston, MA, for Plaintiff.

## MEMORANDUM & ORDER

GORTON, District Judge.

The plaintiff in this case, Edward Freeman ("Freeman"), was a management-level employee of the defendant, MetLife Group, Inc. ("MetLife"). After being discharged, Freeman brought suit to recover the severance compensation to which he believed he was entitled. MetLife now moves to dismiss portions of his complaint.

## I. *Background*

### A. Factual History

Freeman became employed by MetLife in 2004. He was repeatedly commended for his performance there and, in 2005, received a "4" out of 5 rating. The following year, however, he received only a "2" from a different supervisor, although no explanation was offered regarding any deficiency in his performance. In March, 2008, one week before Freeman was supposed to receive his performance review and commensurate bonus for 2007, and one month before lucrative stock options were set to vest, he was terminated by MetLife purportedly not for cause but because his position in the company had been eliminated.

MetLife offered Freeman a severance package under the MetLife Plan for Transition Assistance for Officers ("the MPTA"). The package included 38 weeks' salary ($116,924) and an additional $78,000 in connection with MetLife's incentive compensation plans. According to Freeman, that package was far less than what he deserved, particularly in light of the fact that 2007 had been a successful year for MetLife. In conjunction with its severance offer, MetLife required Freeman to sign a comprehensive release and/or waiver of his substantive rights, including any right to sue for wrongful termination or for non-payment of earned wages and/or other compensation. Freeman refused to accept the severance offer or sign the release.

The MPTA sets forth the procedure officers must follow when they believe that they have been denied any rights or benefits: 1) submit a written request for reconsideration to the Officer in Charge of

Employee Relations, located at MetLife headquarters in New York, 2) within 90 days receive written notification of the decision on the claim (including the specific reason for any denial of the claim) and 3) within 60 days of the denial of the claim submit a written request for review to the same Officer in Charge of Employee Relations. The MPTA clearly states, "You must exhaust the Plan claim and review process as a condition of bringing legal action".

On March 4, 2008, counsel for Freeman, Louis Movitz ("Atty. Movitz"), sent a letter to a MetLife Human Resources Representative in Florida discussing the inadequacies of the proposed severance package for Freeman and seeking to reach a mutually agreeable resolution. A few days later, MetLife's in-house counsel, Susan Flannery ("Atty. Flannery"), briefly responded to Atty. Movitz's letter, stating that she would be handling the matter. Shortly thereafter, Atty. Movitz emailed Atty. Flannery to ask when he could expect a substantive reply from her and she replied that she would be in touch within a week. After Atty. Movitz failed to hear from her as promised, he called and emailed her.

On March 25, 2008, the attorneys finally held a telephone conference during which Atty. Movitz again raised his concerns over the proposed severance package. At that time, Atty. Flannery responded only that the company would be willing to increase MetLife's offer by $30,000 (to $225,000). After receiving a brief letter to that effect, Atty. Movitz again contacted Atty. Flannery seeking substantive responses to his concerns. On April 3, 2008, Atty. Flannery responded that $225,000 was MetLife's last offer and that it would expire on April 7, 2008.

### B. Procedural History

On April 22, 2008, Freeman filed a complaint in Norfolk Superior Court. He al-leged counts of 1) breach of contract, 2) breach of implied contract, 3) wrongful termination, 4) failure to honor obligations concerning incentive compensation, stock options and severance, 5) fraud and deceit, 6) negligent misrepresentation, 7) breach of good faith and fair dealing, 8) promissory estoppel and 9) unjust enrichment. Exactly one month later, MetLife removed the case to this Court on the basis of diversity jurisdiction. After some procedural maneuvering, MetLife filed a motion to dismiss part of the complaint pursuant to Fed.R.Civ.P. 12(b)(6). Freeman's opposition to that motion has been replied to by MetLife after it obtained leave of the Court.

### II. *Analysis*

#### A. Legal Standard

In order to survive a motion to dismiss for failure to state a claim under Fed. R.Civ.P. 12(b)(6), a complaint must contain factual allegations sufficient "to raise a right to relief above the speculative level". *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007). In considering the merits of a motion to dismiss, the court may look only to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint and matters of which judicial notice can be taken. *Nollet v. Justices of the Trial Court of Mass.,* 83 F.Supp.2d 204, 208 (D.Mass.2000) *aff'd,* 248 F.3d 1127 (1st Cir.2000). Furthermore, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Langadinos v. American Airlines, Inc.,* 199 F.3d 68, 69 (1st Cir.2000). If the facts in the complaint are sufficient to state a cause of action, a motion to dismiss the complaint must be denied. *See Nollet,* 83 F.Supp.2d at 208.

### B. Application

#### 1. Count 3: Wrongful Termination

■ In general, an employer in Massachusetts can terminate an at-will employee at any time without cause. *St. Arnaud v. Chapdelaine Truck Center, Inc.*, 836 F.Supp. 41, 43 (D.Mass.1993). Two exceptions to this general rule have been recognized: 1) where there is a violation of public policy and 2) where there is a breach of the implied covenant of good faith and fair dealing. *Id.*

In his complaint, Freeman alleges that MetLife terminated his employment in violation of a) public policy by trying to avoid having to pay incentive compensation and the vesting of Freeman's stock options, b) the "employment contract" arising out of the parties' conduct and/or employee handbooks, the SDP, and MetLife's compensation plans, c) an implied employment contract and d) the implied covenant of good faith and fair dealing. MetLife moves to dismiss the complaint as to the first three alleged violations.

■ MetLife first argues that its actions did not constitute a violation of public policy. Under Massachusetts law, public policy violations are recognized where an at-will employee is terminated

> for asserting a legally guaranteed right ..., for doing what the law requires ..., or for refusing to do that which the law forbids....

*Smith–Pfeffer v. Superintendent of the Walter E. Fernald State Sch.*, 404 Mass. 145, 533 N.E.2d 1368, 1371 (1989). Courts interpret the public policy exception narrowly so as not to "convert the general rule that 'an employment-at-will contract [can] be terminated at any time for any reason or for no reason at all' ". *Id.*, citing *Gram v. Liberty Mut. Ins. Co.*, 384 Mass. 659, 429 N.E.2d 21, 27 n. 6 (1981). Freeman cites no case supporting his allegation

that a public policy violation has occurred in this case. Moreover, courts recognize attempts to avoid paying earned compensation as being violations of the implied covenant of good faith and fair dealing, not violations of public policy. *See Cochran v. Quest Software, Inc.*, 328 F.3d 1, 8 (1st Cir.2003); *Campbell v. BankBoston*, 206 F.Supp.2d 70, 81 (D.Mass.2002) (citing cases).

Because Freeman has pled a breach of that implied covenant, he does not also need to proceed on public policy grounds. *See Petricca v. City of Gardner*, 194 F.Supp.2d 1, 5 (D.Mass.2002) (dismissing duplicative claims); *Roche v. Donahue*, 985 F.Supp. 14, 17 (D.Mass.1997) (same). Therefore, this Court will dismiss part a) of Count 3 as duplicative of part d) of the same count.

■ MetLife further, persuasively, contends that Massachusetts does not recognize a cause of action for wrongful termination based on a breach of an express or implied contract. In *Presto v. Sequoia Sys., Inc.*, this Court rejected the idea that, where the plaintiff has claimed contract liability as has Freeman in Counts 1 and 2, the same underlying conduct can be labeled as tortious (under the guise of "wrongful termination") and thus allow for additional recovery under tort liability. 633 F.Supp. 1117, 1121–22 (D.Mass.1986). Therefore, this Court will dismiss parts b) and c) of Count 3 for failure to state a claim upon which relief can be granted.

#### 2. Count 4: Failure to Honor Obligations

■ In Count 1 of his complaint, Freeman alleges a breach of contract arising from MetLife's "failure to properly compensate" him as he should have been compensated under the

> contractual terms arising from the parties' conduct, ... employee handbook(s),

manual(s), Summary Plan Description(s), Stock and Incentive Plan(s), Long Term Performance Compensation Plan(s), and other employment documents including but not limited to executive compensation, performance shares, stock options and ownership.

Similarly, in Count 4, he alleges that Met-Life failed to honor its obligations in that it

failed to properly compensate [him] or provide a severance package that comports with [his] services and performance, as well as [MetLife's] own internal guidelines [such as employee handbooks and manuals].... By way of example, [MetLife] has failed to provide earned amounts relating to incentive compensation, stock options, and severance pay.

Freeman fails to demonstrate how that count is not substantially subsumed by Count 1. Both counts claim MetLife owes compensation to Freeman as a result of its various employment and compensation documents. Thus, "failure to honor obligations", as Freeman's counsel coins his novel claim, appears to be synonymous with "breach of contract". Accordingly, this Court will dismiss Count 4 of Freeman's complaint as duplicative of Count 1.

### 3. Counts 5 and 6: Fraud, Deceit and Negligent Representation

■ Under Fed.R.Civ.P. 9(b), fraud or mistake must be pled in a complaint with specificity. The same applies to misrepresentation, which "is considered a species of fraud". *Alternative Sys. Concepts, Inc. v. Synopsys, Inc.,* 374 F.3d 23, 29 (1st Cir. 2004). Under this heightened standard, a plaintiff must identify the fraudulent statement or representation, the person making the statement, and when the statement was made. *See Rodi v. S. New England Sch. of Law,* 389 F.3d 5, 15 (1st Cir.2004).

This Court finds that Freeman has failed to meet this standard. Counts 5 and 6 merely allege that,

As set forth above, [MetLife] has committed fraudulent acts and made fraudulent material misrepresentations, including oral and written promises concerning incentive compensation, stock options, and severance pay. [MetLife] represented that it would treat Mr. Freeman fairly and in accordance with the terms of Mr. Freeman's employment.

No more specific reference identifying a particular statement or statements is offered. Therefore, this Court will dismiss Counts 5 and 6 but, pursuant to Fed. R.Civ.P. 15(a)(2), will permit Freeman to amend Counts 5 and 6 within 30 days to bring those counts into compliance with Rule 9(b) if he can.

### 4. All Counts with Respect to ERISA

#### a. Preemption

■ Both parties agree that the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1001–1461, governs those portions of Freeman's claims relating to the MPTA and the recovery of severance pay. Freeman's complaint, however, makes no reference whatsoever to ERISA but rather sets forth what appear to be state law contract and tort claims. MetLife argues that those portions of the complaint subject to ERISA should, therefore, be dismissed because of the statute's broad preemption of state law claims. *See* 29 U.S.C. § 1132(a)(1)(B).

This Court disagrees. The fact that Freeman did not specifically refer to ERISA in his complaint does not warrant the dismissal of the portions of his claims subject to that statute. *See Metro. Life Ins. Co. v. Taylor,* 481 U.S. 58, 63–67, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987) (allowing

a case to proceed after removal to federal court where the complaint purportedly raised only state law causes of action that were preempted by ERISA). When federal law completely preempts a particular kind of claim, as does ERISA for claims relating to employee benefit plans, any such complaint is necessarily federal in character, regardless how it is pled. *Id.* Rather than serving as a basis for dismissal, ERISA provides the substantive law upon which those claims will be assessed. *See Wolf v. Reliance Standard Life Ins. Co.,* 71 F.3d 444, 448–49 (1st Cir.1995) (stating that ERISA preemption concerned the choice of substantive law governing claims of breach of contract and unfair trade practices brought initially in state court and then removed to federal court).

Therefore, this Court will deny MetLife's motion to dismiss, without prejudice, with respect to MetLife's ERISA preemption argument. However, this Court treats the part of MetLife's motion based on that argument as a motion for a more definite statement pursuant to Fed. R.Civ.P. 12(e) and will permit the plaintiff to amend his complaint so that he may recharacterize his claim for severance pay as explicitly arising under ERISA.

### b. Failure to Exhaust Administrative Remedies

Although ERISA itself is silent about exhaustion, many United States Courts of Appeals, including the First Circuit, have read into the statute a requirement that a claimant exhaust administrative remedies before bringing suit. *See Santana v. Deluxe Corp.,* 12 F.Supp.2d 162, 174–75 (D.Mass.1998). In particular, that requirement has been recognized repeatedly for claims, such as those at issue here, that are based on a contract. *See Madera v. Marsh USA, Inc.,* 426 F.3d 56, 62 (1st Cir.2005); *Drinkwater v. Metro. Life Ins.*

*Co.,* 846 F.2d 821, 826 (1st Cir.1988). The policy underlying the requirement is that

> [a]dministrative claim-resolution procedures reduce the number of frivolous lawsuits under ERISA, minimize the cost of dispute resolution, enhance the plan's trustees' ability to carry out their fiduciary duties expertly and efficiently by preventing premature judicial intervention in the decision-making process, and allow prior fully considered actions by pension plan trustees to assist courts if the dispute is eventually litigated.

*Treadwell v. John Hancock Mut. Life Ins. Co.,* 666 F.Supp. 278, 284 (D.Mass.1987).

■ An exception to the exhaustion requirement exists "when resort to the administrative route is futile or the remedy inadequate". *Drinkwater,* 846 F.2d at 826, quoting *Amato v. Bernard,* 618 F.2d 559, 568 (9th Cir.1980). A claimant asserting the futility exception to the exhaustion doctrine must present facts sufficient to make a "clear and positive showing" to support his assertion. *Corsini v. United Healthcare Corp.,* 965 F.Supp. 265, 269 (D.R.I.1997); *see also Drinkwater,* 846 F.2d at 826.

■ MetLife argues that Freeman failed to exhaust his administrative remedies set out in the MPTA because he did not request reconsideration of the denial of his claim from the Officer in Charge of Employee Relations or file a written request for review with that Officer. Indeed, the record clearly shows that Freeman did not follow the administrative review procedure set out in the MPTA.

Freeman responds that resorting to MetLife's administrative review process would be futile. He cites, in support of that argument, MetLife's refusal, by its inhouse counsel Atty. Flannery, to provide a substantive response to his objection to the severance package and her statement that

$225,000 was MetLife's last, best (and expiring) offer.

MetLife's actions alone may not indicate that it would be futile for Freeman to pursue his administrative remedies under the MPTA but, because the parties have been litigating this issue for the past six months, MetLife has clearly demonstrated its unwillingness to reconsider Freeman's severance package. Those factors together are sufficient to establish the futility exception. The plaintiff is, therefore, excused from further compliance with ERISA's exhaustion requirement.

## ORDER

In accordance with the foregoing, the defendant's motion to dismiss (Docket No. 9) is **ALLOWED** in part, and **DENIED** in part.

The motion is, with respect to parts a) through c) of Count 3 (wrongful termination) and with respect to Counts 4 (failure to honor obligation), 5 (fraud and deceit) and 6 (negligent misrepresentation), **ALLOWED**. Plaintiff may amend Counts 5 and 6, within the prescribed time, to bring them into compliance with Fed. R.Civ.P. 9(b), if he is so able.

The motion is, with respect to all counts (to the extent that they seek to recover severance pay and are thus subject to ERISA), **DENIED**. Plaintiff may amend his complaint, within the prescribed time, so as to re-characterize his claims for severance pay as explicitly arising under ERISA.

The plaintiff shall amend his complaint, if at all, as permitted herein within 30 days of the entry of this Order.

**So ordered.**