**PUERTO RICO OFFICE OF THE OMBUDSMAN FOR THE ELDERLY, herein represented by Hon. Rossana Lopez Leon, Plaintiff**

**v.**

**Commonwealth of PUERTO RICO, et al., Defendant(s).**

**Civil No. 09–2018 (JAG).**

United States District Court, D. Puerto Rico.

Oct. 22, 2009.

Puerto Rico Office of the Ombudsman for the Elderly, pro se.

Rossana Lopez–Leon, pro se.

Luis Fortuño–Burset, pro se.

## OPINION AND ORDER

GARCIA–GREGORY, District Judge.

For the reasons set forth below, this Court **DISMISSES** the present case for lack of jurisdiction.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Puerto Rico Office of the Ombudsman for the Elderly ("PROOE") is the designated state agency in Puerto Rico under the Older American Act of 1965, 42 U.S.C. §§ 3001, et seq. ("OAA"). The OAA is the only Federal social services law aimed solely at meeting the needs of citizens aged sixty (60) and over. *Tyrrell v. City of Scranton,* 134 F.Supp.2d 373, 382 (M.D.Pa.2001) (internal citation omitted). Under the OAA, the federal government provides assistance to states for the development and administration of a comprehensive system of services for the elderly. *See* 42 U.S.C. §§ 3001, 3003. The Administration on Aging ("AoA"), which is part of the Department of Health and Human Services, is responsible for the administration of the OAA at the federal level. 42 U.S.C. § 3011. In order to participate in the OAA programs, a State must designate a state agency that will be responsible for the development and administration of a state plan. 42 U.S.C. § 3025. The state plan, which must be submitted to the AoA for approval, must meet certain eligibility criteria. 42 U.S.C. § 3027. If the AoA determines that a state has failed to comply with those provisions of the Act governing state plans, the AoA may notify the state that no further funding will be forthcoming until the failure to comply has been corrected. 42 U.S.C. § 3027(d).

Defendant Board of Restructuring and Fiscal Stabilization of Puerto Rico ("BRFS") is an entity created by statute to aid in the economic recovery process of Puerto Rico. Specifically, BRFS is responsible for reducing the Commonwealth of Puerto Rico's government spending in accordance with Puerto Rico Act No. 7 of March 9, 2009 ("Act 7"). To achieve the level of cost reduction needed, Act 7 contains a provision that calls for the elimination of government positions.

On September 25, 2009, BRFS indicated to PROOE that pursuant to Act 7, one hundred eleven (111) of one thirty nine (139) PROOE employees were marked for termination. On that date, BRFS sent PROOE the termination letters that would be given to the employees marked for termination and provided instructions for the employment termination process.

PROOE believes BRFS is erroneously requiring it to terminate its employees because most of its employees' positions are federally funded and Act 7 exempts from termination "employees of Agencies that work in federal programs subsidized with federal funds and which program[sic] conditions the grant and receipt of federal funds to the retention of such employees."[1] (Translation ours). Furthermore, PROOE considers that the terminations mandated by BRFS violate the OAA, the Age Discrimination Act ("ADA"), 42 U.S.C. § 6101 et seq., the Fifth and Fourteenth Amendment to the United States Constitution.

---

**1.** Act 7 will not be used to dispose of the jurisdictional issue before this Court. As such, a certified translation will not be required.

On October 4, 2009, PROOE herein represented by the Ombudsman[2] filed a complaint in this Court. (Docket No. 1). This complaint was amended on October 13, 2009.[3] PROOE brings a 42 U.S.C. § 1983 action against Defendants the Commonwealth of Puerto Rico, the Governor of Puerto Rico, Luis G. Fortuño, BRFS, Carlos M. García, María Sánchez Brás, Juan Carlos Puig Morales, Miguel Romero, and José Pérez Riera (collectively "Defendants") seeking injunctive relief for alleged violations of the OAA, the Fifth and Fourteenth Amendment of the United States Constitution. Moreover, PROOE avers that Defendants violated the ADA. PROOE also brings a supplemental law claim under Act 7. PROOE requests that this Court among other things enjoin Defendants from terminating PROOE's federally funded employees. PROOE also moves this Court for declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202.

PROOE invokes this Court's jurisdiction pursuant to 28 U.S.C. § 1331, which provides federal court jurisdiction in civil actions arising under the Constitution and laws of the United States. Additionally, PROOE requests that this Court exercise jurisdiction pursuant to 28 U.S.C. §§ 1343(a)(3) and (4)[4] which parrots the text of 42 U.S.C. § 1983. Hence, federal jurisdiction under 28 U.S.C. § 1343(a) hinges upon the existence *vel non* of a substantial claim under § 1983. *Bonas v. Town of N. Smithfield,* 265 F.3d 69, 74 (1st Cir.2001). (Docket No. 18).

It is black-letter law that a federal court has an obligation to inquire *sua sponte* into its own subject matter jurisdiction as it is required to determine whether jurisdiction exists prior to proceeding to the merits of the case. *United Seniors Ass'n v. Philip Morris USA,* 500 F.3d 19, 23 (1st Cir. 2007); *McCulloch v. Velez,* 364 F.3d 1, 5 (1st Cir.2004) (internal citation omitted). Accordingly, the parties were ordered to address whether this Court has jurisdiction over the case at bar. (Docket Nos. 4, 10). PROOE filed several motions in which it argued that this Court has jurisdiction over its claims. (Docket Nos. 5 and 20). On October 13, 2009, Defendants filed their brief in opposition. (Docket No. 21). On October 16, 2009, this Court heard oral arguments on the jurisdictional issue.[5]

---

**2.** The Ombudsman is the person that heads the PROOE. 42 U.S.C. § 3058g(a)(2).

**3.** In the original complaint, PROOE did not allege violations of ADA, the Fifth, and Fourteenth Amendments. PROOE, however, did seek a temporary restraining order ("TRO") and injunctive relief. (Docket No. 1). The TRO was denied and the injunctive relief request was denied without prejudice because Defendants had not been properly notified. (Docket No. 4). A subsequent motion for reconsideration of the TRO was denied. (Docket No. 10). This Court will only address the amended complaint.

**4.** Section 1343(a) provides in pertinent part that:

a) The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;

(4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote.

28 U.S.C. § 1343(a).

**5.** Originally, the Court set for October 16, 2009 a hearing to address PROOE's preliminary injunction request. (Docket No. 10). The hearing was subsequently converted into oral argument on the jurisdictional issue. (Docket No. 38).

## DISCUSSION

It is axiomatic that "[f]ederal courts are courts of limited jurisdiction." *Picciotto v. Cont'l Cas. Co.*, 512 F.3d 9, 17 (1st Cir. 2008) (internal citation omitted) (alteration in original). PROOE argues that this Court has jurisdiction under 28 U.S.C. § 1331 because its claims arise under the Constitution and laws of the United States as it brings forth claims under the OAA, ADA, Fifth and Fourteenth Amendment of the United States Constitution. PROOE also argues that there is jurisdiction under 28 U.S.C. § 1343 as it proffers substantial claims under § 1983. We will first discuss whether this Court has jurisdiction under the ADA.

### 1. *ADA*

The ADA prohibits age discrimination by entities receiving federal financial assistance. Section 303 of the ADA provides in pertinent part that "no person in the United States shall, on the basis of age, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any program or activity receiving Federal financial assistance." 42 U.S.C. § 6102. A plaintiff must exhaust the administrative remedies set forth in 42 U.S.C. § 6104 and 45 C.F.R. 90.50 before bringing an action under the ADA. Administrative remedies are exhausted if 180 days have elapsed since the complainant filed a complaint before the relevant federal funding agency and the agency has made no finding, or if, whatever the interval, the agency has found in favor of the complainant. 42 U.S.C. § 6104(f); 45 C.F.R. § 90.50(a). Moreover, before filing the action in federal court, the complainant must give thirty days' notice by registered mail to the Secretary of Health and Human Services, the Attorney General, the head of the granting agency, and the grant recipient. 42 U.S.C. § 6104(e)(1); 45 C.F.R. § 90.50(b)(3)(iii). This notice must state the alleged violation of the ADA, the relief requested, the court in which the action shall be brought, and whether attorney's fees will be demanded if the plaintiff prevails. 42 U.S.C. § 6104(e)(2); 45 C.F.R. § 90.50(b)(3)(iv).

■ The record is devoid of any evidence that administrative remedies were exhausted in this case. PROOE, however, attempts to show the inapplicability of the exhaustion doctrine here, by arguing that the doctrine is subject to certain exceptions. Specifically, PROOE stresses that a party is not required to exhaust its administrative remedies where it would be futile for it to do so. *See, e.g., Drinkwater v. Metropolitan Life Ins. Co.*, 846 F.2d 821, 826 (1st Cir.1988) (discussing exhaustion in the context of ERISA). At oral argument, PROOE merely made a blanket assertion, unsupported by any facts that it would have been futile in this case for it to follow the ADA's administrative exhaustion process. We find that PROOE's attempt to call this exception into play is insufficient. *See, e.g., id.* (finding that a blanket assertion, unsupported by any facts, is insufficient to call the futility exception into play).

At oral argument, PROOE also pointed this Court to the fact that it is well settled law that exhaustion of state administrative remedies is not a prerequisite to filing an action under 42 U.S.C. § 1983. *Chmielinski v. Mass. Office of the Comm'r of Prob.*, 513 F.3d 309, 314 (1st Cir.2008) (internal citations omitted). However, PROOE's claims under the ADA do not fall under the purview of § 1983 as it is a separate cause of action. Unlike claims brought under § 1983, the exhaustion of administrative remedies is a prerequisite to filing an action pursuant to the ADA. Therefore, it follows that PROOE may not ground its federal jurisdiction argument on the ADA. Accordingly, we shall proceed to discuss

whether PROOE may hinge jurisdiction on the OAA.

## 2. *OAA*

 In order to have jurisdiction to entertain PROOE's request for injunctive and declaratory relief pursuant to the OAA, said statute must confer a federal right enforceable under § 1983. "Section 1983 provides a remedy only for the deprivation of 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002). Specifically, § 1983 merely provides a mechanism for enforcing individual rights "secured" elsewhere, i.e., rights independently "secured by the Constitution and laws" of the United States. "One cannot go into court and claim a 'violation of § 1983'—for § 1983 by itself does not protect anyone against anything." *Id.* at 285, 122 S.Ct. 2268 (internal citation omitted).

 It is important to note that violations of federal rights, not laws give rise to § 1983 actions. *Id.* at 283, 122 S.Ct. 2268. The Supreme Court held in *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981) that "[i]n legislation enacted pursuant to the spending power, the typical remedy for state noncompliance with federally imposed conditions is not a private cause of action for noncompliance but rather action by the Federal Government to terminate funds to the State." *Id.* at 28, 101 S.Ct. 1531. The Court has made clear that unless Congress "speaks with a clear voice," and manifests an "unambiguous" intent to confer individual rights, federal funding provisions provide no basis for

private enforcement by § 1983. *Gonzaga Univ.*, 536 U.S. at 283, 122 S.Ct. 2268; *id.* at 17, 28, and n. 21, 101 S.Ct. 1531. Accordingly, where the text and structure of a statute provides no indication that Congress intends to create new individual rights, there is no basis for a private suit under § 1983.[6] *Gonzaga Univ.*, 536 U.S. at 286, 122 S.Ct. 2268. We note that since *Pennhurst*, the Court has found that spending legislation gave rise to rights enforceable under § 1983 only in *Wright v. Roanoke Redevelopment & Housing Authority*, 479 U.S. 418, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987) and *Wilder v. Va. Hosp. Ass'n*, 496 U.S. 498, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990) where statutory provisions explicitly conferred specific monetary entitlements upon the plaintiffs, and there was no sufficient administrative means of enforcing the requirements against defendants that failed to comply. *Gonzaga Univ.*, 536 U.S. at 280–81, 122 S.Ct. 2268.

The OAA is legislation enacted pursuant to the spending power. Thus, the OAA must unambiguously confer an enforceable right under § 1983 for this Court to have jurisdiction to entertain PROOE's request. If the OAA does not unambiguously confer an enforceable right under § 1983, the OAA cannot serve as a basis for federal court jurisdiction under 28 U.S.C. § 1331. Likewise, PROOE's claims under the OAA could not be brought pursuant to 28 U.S.C. § 1343 as the jurisdictional statute, parrots the text of 42 U.S.C. § 1983 and federal jurisdiction hinges upon the existence of a substantial claim under section 1983.

---

**6.** We interestingly note that even though a statutory violation may be enforced through § 1983 this requires a different inquiry than that involved in determining whether a private right of action can be implied from a particular statute. Both inquiries however overlap in one meaningful respect—in either case it must first be determined whether Congress intended to create a federal right. *Gonzaga Univ.*, 536 U.S. at 284, 122 S.Ct. 2268.

PROOE argues that the OAA gives rise to an enforceable right under § 1983. Namely, PROOE avers that 42 U.S.C. § 3027 provides an enforceable federal right. As mentioned above, § 3027 establishes certain eligibility criteria for the state plan, which must be submitted to the AoA for approval. 42 U.S.C. § 3027. Furthermore, § 3027 provides that if the AoA determines that a state has failed to comply with those provisions of the Act governing state plans, the AoA may notify the state that no further funding will be forthcoming until the failure to comply has been corrected. 42 U.S.C. § 3027(d). PROOE avers that the terminations mandated by BRFS would go against the state plan already approved by AoA and, thus, would be in violation of § 3027.

▋ We find that § 3027 lacks the "rights creating" language that is critical to showing Congress' "unambiguous" intent to create an enforceable right. First, this provision lacks individually focused terminology as it serves primarily to inform the states of the requirements that their plans must have in order to obtain the AoA's approval. Most subsections of § 3027 begin with "[t]he plan shall...." *See* 42 U.S.C. § 3027(a). The other subsections speak to the Assistant Secretary. *See* 42 U.S.C. § 3027(b), (c) and (d).[7] Thus, section 3027 is not concerned with whether the needs of any particular person is satisfied. *See, e.g., Gonzaga Univ.,* 536 U.S. at 291, 122 S.Ct. 2268 (holding that a statute that contains no rights-creating language because it lacks individual terminology and has an aggregate, not individual, focus does not create an enforceable right under § 1983).

PROOE also cites 42 U.S.C. § 3058g(j), in support of its proposition that the OAA provides it with an enforceable right under

§ 1983. However, this provision does not show Congress' "unambiguous" intent to create an enforceable right. Section 3058g(j) speaks only to the State directing that it must ensure that appropriate sanctions will be administered if any employee or resident suffers from willful interference, retaliation and reprisal as defined therein. 42 U.S.C. § 3058g(j). Thus, the statute focuses on the entity regulated i.e., the State rather than any individuals protected. This sort of focus does not confer the "individual entitlement" that is enforceable under § 1983. *Alexander v. Sandoval,* 532 U.S. 275, 289, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001) (noting that "[s]tatutes that focus on the person regulated rather than the individuals protected create 'no implication of an intent to confer rights on a particular class of persons' ") (internal citation omitted).

▋ Additionally, PROOE points to 42 U.S.C. §§ 3058g(a)(3), and 3058g (g)(2). Section 3058g (a)(3) sets forth the functions of the Ombudsman. Among the functions stated therein, the Ombudsman shall personally or through a representative "represent the interests of the residents before governmental agencies and seek administrative, legal, and other remedies to protect the health, safety, welfare, and rights of the residents." 42 U.S.C. § 3058g(a)(3)(E). Section 3058g(g)(2) states that the "State agency shall ensure that ... the Office pursues administrative, legal and other appropriate remedies on behalf of residents." 42 U.S.C. § 3058g(g)(2). These subsections lack "rights creating language" as they are devoid of individual terminology. Furthermore, they focus on the entity regulated rather than the individuals protected.

---

7. Subsections (c) and (e) speak to the state. However, they establish an administrative review process that as explained also counsels against finding an enforceable right under § 1983.

■ Furthermore, PROOE cites in support of its jurisdictional claim 42 U.S.C. § 3001 and 42 U.S.C. § 3028. Section 3001 is Congress' declaration of objectives as to the Older American Act which contains no rights creating language. *See* 42 U.S.C. § 3001. Section 3028 deals with the administration of state plans and also lacks any individualized terminology that would show Congress' unambiguous intent to create an enforceable federal right. *See* 42 U.S.C. § 3028. Finally, PROOE indicates that 42 U.S.C. §§ 3025, 3058c and 3058d(a)(3) evidence that it has an enforceable right through § 1983. Again, we disagree. These three sections of the OAA focus on the entity regulated rather than the individuals protected as they generally indicate requirements that either the State or the State agency must comply with. *See* 42 U.S.C. §§ 3025, 3058c and 3058d(a)(3). Accordingly, we find that PROOE has failed to show that pursuant to the OAA it has an enforceable right under § 1983.[8] *See generally Legal Servs. v. Arnett,* 114 F.3d 135, 139 (9th Cir.1997) (holding that under 42 U.S.C. 3026(a)(5)(A)(ii)(II) and 42 U.S.C. § 3027(a)(15)(B) of the OAA there is no enforceable right pursuant to § 1983); *City of Chicago v. Lindley,* 66 F.3d 819, 826 (7th Cir.1995) (concluding that 42 U.S.C. § 3025(a)(2)(C) of the OAA does not create rights enforceable under § 1983 because its standards are too amorphous to be judicially enforceable); *Martinez v. Wilson,* 32 F.3d 1415, 1420 (9th Cir.1994) (same).

This Court's conclusion is buttressed by the fact that Congress enacted administrative means of enforcing the state plan requirements imposed by the OAA. Section 3027(d) establishes that if a state fails to comply with those provisions of the Act governing state plans, the AoA may notify the state that no further funding will be forthcoming until the failure to comply has been corrected. 42 U.S.C. § 3027(d). After such notification, the state must be given an opportunity for a hearing before the AoA, 42 U.S.C. § 3027(c), and may seek review of the final administrative action in the appropriate United States Court of Appeals. 42 U.S.C. § 3027(e). This administrative remedy counsels against finding a congressional intent to create individually enforceable private rights under § 3027. *See, e.g., Gonzaga Univ.,* 536 U.S. at 290, 122 S.Ct. 2268 (finding that the existence of an administrative proceeding in a statute counsels against a finding of congressional intent to create individually enforceable private rights under the § 1983). Thus, this Court lacks jurisdiction under the OAA to entertain PROOE's request for injunctive relief and declaratory judgment. Next, this Court will address whether the Fifth Amendment serves as a basis for federal jurisdiction.

### 3. *Fifth Amendment*

■ The Fifth Amendment applies only to actions of the federal government not those of state governments. *Public Utilities Commission v. Pollak,* 343 U.S. 451, 461, 72 S.Ct. 813, 96 L.Ed. 1068 (1952); *see also Martinez–Rivera v. Ramos,* 498 F.3d 3, 8 (1st Cir.2007). Since there are no federal actors in the case at bar, the Fifth Amendment cannot be used by PROOE to invoke this Court's limited jurisdiction. Finally, we shall address whether the Fourteenth Amendment serves as a basis for jurisdiction.

### 4. *Fourteenth Amendment*

PROOE argues that Act 7 as applied by Defendants violates the Equal Protection

---

**8.** "[T]he plaintiff bears the burden of establishing jurisdiction." *Phillips v. Prairie Eye Ctr.,* 530 F.3d 22, 25 (1st Cir.2008) (internal citation omitted).

Clause of the Fourteenth Amendment. Specifically, PROOE alleges that "Defendants have spared federally funded positions in other government agencies such as the Puerto Rico Institute of Culture, but in reckless disregard of the provisions of Act 7, and in clear discrimination in the administration of said law against the Plaintiffs and its protected clientele, persist in their intention of eliminating the federally funded positions in the [PROOE]." (Docket No. 18, ¶ 23). We find that PROOE lacks standing to bring such a claim.

■ The OAA's legislative history reflects Congress's intention that the area agencies have the added function of serving as advocates on behalf of the needs of the elderly. *Meek v. Martinez,* 724 F.Supp. 888, 901 (S.D.Fla.1987) (citing 1984 U.S.Code Cong. & Admin. News 2974, 2976). However, the OAA authorizes area agencies such as PROOE to act as an advocate for the elderly at the state and local level, rather than at the federal level. *City of Chicago v. Shalala,* No. 97 C 4884, 1998 WL 164889, at *4–5, 1998 U.S. Dist. LEXIS 4463, at *14–15 (N.D.Ill. Mar. 31, 1998); *see also* 42 U.S.C. § 3026(a) (describing parameters of plans developed by each area agency on aging). At the federal level, Congress has designated the AoA within the United States Department of Health and Human Services to serve as an advocate for the elderly. *Shalala,* 1998 WL 164889, at *4–5, 1998 U.S. Dist. LEXIS 4463, at *14–15; *see also* 42 U.S.C. § 3011(a); 42 U.S.C. § 3013(a)(1) (the AoA shall "coordinate, advise, consult with, and cooperate with the head of each department, agency, or instrumentality of the Federal Government proposing or administering programs or services substantially related to the objectives of this chapter, with respect to such programs or services"). Thus, PROOE lacks standing to bring an equal protection claim on behalf of the elderly in this Court.

■ Likewise, PROOE lacks standing to bring a claim under the Equal Protection Clause of the Fourteenth Amendment for alleged injuries suffered by the agency. Political subdivisions of States are not considered sovereign entities. *Ysursa v. Pocatello Educ. Ass'n,* —— U.S. ——, 129 S.Ct. 1093, 1100, 172 L.Ed.2d 770 (2009) (internal citation omitted). They are instead subordinate governmental instrumentalities set up by the State to assist in the carrying out of state governmental functions. *Id.* (internal citations omitted). "These governmental units are 'created as convenient agencies for exercising such of the governmental powers of the State as may be entrusted to them,' and the 'number, nature and duration of the powers conferred upon [them] ... and the territory over which they shall be exercised rests in the absolute discretion of the State.'" *Reynolds v. Sims,* 377 U.S. 533, 575, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964). State political subdivisions have "no privileges or immunities under the federal constitution which it may invoke in opposition to the will of its creator." *Ysursa,* 129 S.Ct. at 1101 (noting that private corporations are subject to the government's legal authority to regulate their conduct and that a political subdivision, on the other hand, is a subordinate unit of government created by the State to carry out delegated governmental functions) (internal citations omitted). As they are mere departments, the State may withhold, grant or withdraw powers and privileges as it sees fit. *Id.* at 1100 (internal citation and quotation marks omitted).

■ There can be no doubt that PROOE is a political subdivision with limited powers. The PROOE does not have its own income; it does not have fiscal autonomy to make loans, to issue bonds; it does not have a Board of Directors to govern itself since its administrator, the

Ombudsman, is appointed by the Governor; and it executes contracts and exercises other functions in representation of the Commonwealth. *See Canchini v. C.R.U.V.*, 5 P.R. Offic. Trans. 483, 105 D.P.R. 352 (1976) (holding that petitioner was an instrumentality of the Commonwealth and not a public corporation because it does not have fiscal autonomy to make loans, to issue bonds, or to keep bank accounts; it does not have a Board of Directors to govern itself since its Administrator is appointed by the Governor; it is not empowered to accept donations since it accepts them in the name of the Commonwealth government; and it executes contracts and exercises other functions in representation of the Commonwealth); *See also* P.R. Laws Ann. tit. 3, §§ 1976a–1976f.[9] Specifically, PROOE is a political subdivision created by the Commonwealth of Puerto Rico to among other things carry out the provisions of the OAA. *See* P.R. Laws Ann. tit. 3, §§ 1976a–1976f.

The enabling act of the PROOE states that the office, as part of its functions and duties, may file suits in the courts, administrative fora, instrumentalities and political subdivisions of the Commonwealth of Puerto Rico. P.R. Laws Ann. tit. 3, § 1976d(c). Thus, when the Commonwealth of Puerto Rico created PROOE, it limited PROOE's power to seek legal recourse only to the Courts of the Commonwealth of Puerto Rico. Consequently, PROOE lacks the capacity to bring a suit before this Court in representation of the elderly or for actual injury suffered.[10] As such, PROOE lacks standing to request any remedy from this Court.

In sum, this Court finds that for several reasons it lacks jurisdiction over the case at bar. As discussed above, the ADA cannot serve as a basis for jurisdiction because PROOE failed to exhaust administrative remedies. Likewise, the OAA cannot be used by PROOE to invoke this Court's jurisdiction because PROOE failed to show that said statute confers an enforceable right under § 1983. Additionally, the Fifth Amendment cannot serve as a ground for jurisdiction because there are no federal actors in the present case. Finally, we lack jurisdiction because PROOE does not have standing to bring any claims in this Court. *See, e.g., United Seniors Ass'n v. Philip Morris USA*, 500 F.3d 19, 27 (1st Cir.2007) (holding that the court lacked jurisdiction over the case because plaintiff failed to establish that it had standing).

■ Since this Court is without jurisdiction, we cannot proceed at all in any cause as "[j]urisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (citing *Ex parte McCardle*, 74 U.S. 506, 7 Wall. 506, 514, 19 L.Ed. 264 (1869)). Accordingly, the present case shall be dismissed without prejudice. PROOE should note that because the dismissal of this case is without prejudice, it may renew its request for injunctive and declaratory relief in the Courts of the Commonwealth of Puerto Rico and/or pursue whatever administrative remedies it may have under Act 7 including a peti-

---

9. The provisions of P.R. Laws Ann. tit. 3, §§ 1976a–1976f used by this Court were translated by a certified court interpreter and are included in the record.

10. PROOE argues that it is not restricted by its enabling act because it derives its power

and function through the OAA, in particular 42 U.S.C. § 3058g(a). However, as mentioned before, the OAA merely indicates requirements that States must adhere to in order to receive federal funding for the service of the elderly.

tion to the BRFS to exempt its employees from said law.[11]

### CONCLUSION

For the reasons set forth above, the present case is **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction.

IT IS SO ORDERED.

---

11. At oral argument, the Court made very clear that it is not insensitive to the needs of the aging population in Puerto Rico, whose dignity commands unquestionable respect and protection. However, the Court must act within the confines of the Constitution and laws of the United States, which embody the principle of limited federal jurisdiction. We gave the parties and their counsel an opportunity to resolve the substantive issues so that the essential services of the aging population would not be affected while at the same time any budgetary concerns by the Government could be properly addressed. This Court earnestly hopes that an acceptable solution may be reached in the near future and that those who are to be served by the Government agencies involved are not negatively impacted through bureaucratic entanglements.