32 F.3d 1415
 Linda MARTINEZ; Gilbert Acosta; Aurora Acosta; City of
Los Angeles Area Agency on Aging; International Institute
of Los Angeles; Altamed; Watts Labor Community Action
Committee; Associacion Nacional Pro Personas Mayores;
National Caucus and Center on Black Aged; National
Pacific/Asian Resource Center on Aging; National Indian
Counsel of Aging, Inc.; City of San Francisco; County of
San Francisco, Plaintiffs-Appellees,
v.
Pete WILSON, Governor of the State of California;
California Department of Aging; Chris Arnold,
Director California Department of Aging,
Defendants,
and
Ramona Dario; Manuel Avila, Intervenors-Appellants,
and
Jovenes De Antano, Inc.; Mary Maderos; PSA 1 Area Agency
on Aging; PSA 2 Area Agency on Aging, et al.;
Maria Blanco, et al., Intervenors.
Linda MARTINEZ; Gilbert Acosta; Aurora Acosta; City of
Los Angeles Area Agency on Aging; International Institute
of Los Angeles; Altamed; Watts Labor Community Action
Committee; Associacion Nacional Pro Personas Mayores;
National Caucus and Center on Black Aged; National
Pacific/Asian Resource Center on Aging; National Indian
Counsel of Aging, Inc.; City of San Francisco; County of
San Francisco, Plaintiffs-Appellees,
v.
Pete WILSON, Governor of the State of California;
California Department of Aging; Chris Arnold,
Director California Department of Aging,
Defendants,
and
PSA 3 Area Agency on Aging; PSA 15 Area Agency on Aging;
PSA 16 Area Agency on Aging; PSA 24 Area Agency on Aging;
PSA 1 Area Agency on Aging; PSA 26 North Coast
Opportunities, Inc.; PSA 2 Area Agency on Aging, et al.,
Intervenors-Appellants,
and
Jovenes De Antano, Inc., et al.; Maria Blanco, et al., Intervenors.
Linda MARTINEZ; Gilbert Acosta; Aurora Acosta; City of
Los Angeles Area Agency on Aging; International Institute
of Los Angeles; Altamed; Watts Labor Community Action
Committee; Associacion Nacional Pro Personas Mayores;
National Caucus and Center on Black Aged; National
Pacific/Asian Resource Center on Aging; National Indian
Counsel of Aging, Inc.; City of San Francisco; County of
San Francisco, Plaintiffs-Appellants,
v.
Pete WILSON, Governor of the State of California;
California Department of Aging; Chris Arnold,
Director California Department of Aging,
Defendants-Appellees,
and
Jovenes De Antano, Inc., et al.; PSA 1 Area Agency on
Aging, et al.; Mario Blanco, et al., Intervenors-Appellees,
Linda MARTINEZ; Gilbert Acosta; Aurora Acosta; City of
Los Angeles Area Agency on Aging; International Institute
of Los Angeles; Altamed; Watts Labor Community Action
Committee; Associacion Nacional Pro Personas Mayores;
National Caucus and Center on Black Aged; National
Pacific/Asian Resource Center on Aging; National Indian
Counsel of Aging, Inc.; City of San Francisco; County of
San Francisco, Plaintiffs-Appellees,
Mario Blanco, et al., Intervenor-Appellee,
v.
Pete WILSON, Governor of the State of California;
California Department of Aging; Chris Arnold,
Director California Department of Aging,
Defendants-Appellants.
 Nos. 92-56458, 92-56464, 92-56468 and 93-56655.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted June 6, 1994.
Decided Aug. 22, 1994.
 
 Terrance Lee Hancock, Senior Citizens Legal Services, Santa Cruz, CA, attorney for intervenors-appellants Dario and Avila; intervenors-appellees Jovenes De Antano, Inc., et al.
 Jay D. Christensen, Los Angeles, CA, attorney for intervenors-appellants Area 1 Agency on Aging, etc.
 Charlton G. Holland, III, Asst. Atty. Gen., San Francisco, CA, attorney for State appellants and State appellees.
 Eugenie Denise Mitchell, Legal Services of Northern California, Sacramento, CA, attorney for plaintiffs in intervention and intervenors-appellees Blanco, et al.
 Neal S. Dudovitz, National Senior Citizens Law Center, and John K. Van de Kamp, Dewey Ballantine, Los Angeles, CA, attorneys for plaintiffs-appellees and appellants Martinez, et al.
 Appeals from the United States District Court for the Central District of California.
 Before: FLETCHER, CANBY, and HALL, Circuit Judges.
 CANBY, Circuit Judge:
 
 
 1
 The City of Los Angeles Area Agency on Aging and the City and County of San Francisco, along with several other individual and organizational plaintiffs, ("the Cities") brought this action challenging California's formula for distributing funds under the Older Americans Act, 42 U.S.C. Secs. 3001 et seq. The district court entered an injunction prohibiting the State from using certain factors in its formula, requiring the State to add other factors, and approving a new formula. On appeal, we conclude that much of Cities' complaint is moot, and that the remainder does not state a claim for which relief can be granted. We also conclude that the intervenors' complaints are moot. We therefore vacate the injunction and remand to the district court with instructions to dismiss the complaints. We also reverse the district court's awards of attorney's fees against the State.
 
 BACKGROUND
 
 2
 The Older Americans Act (OAA) authorizes federal grants to fund state-created programs designed to help older individuals meet their daily needs. To receive these funds, a state must develop a plan delineating the types of programs it intends to create and the methods it will use to target particular groups of older individuals. See 42 U.S.C. Sec. 3027. The state also must divide itself into one or more local planning and service areas (PSAs), which implement the programs, and develop an intrastate funding formula (IFF) for determining how funds are to be distributed among the PSAs. 42 U.S.C. Sec. 3025(a)(1)(E) & (2)(C).
 
 
 3
 All of the plaintiffs that we refer to collectively as the Cities have interests in the distribution of OAA funds in the metropolitan areas of California. In June 1991, they sued the State of California and the California Department of Aging, alleging that the formula California used to distribute OAA funds violated the Older Americans Act, Title VI of the Civil Rights Act of 1964, the Equal Protection Clause of the Fourteenth Amendment, and various provisions of California law and of the state constitution.
 
 
 4
 At that time, the State's IFF distributed funds to each of the State's thirty-three PSAs according to a variety of factors, four of which the Cities maintained caused OAA funds to be misdirected. According to the Cities, those factors improperly diverted funds from PSAs that provide services in urban areas (which the Cities contended have the highest populations of needy and minority older persons), and overfunded PSAs that provide services in rural areas (which the Cities contended have lower populations of needy and minority older persons). Thus, the Cities argued, the IFF violated the OAA's mandate that the formula take into account "the distribution ... of older individuals with greatest economic ... and ... social need, with particular attention to low-income minority older individuals."[1] The Cities asked the district court to enjoin the use of the four challenged factors, and to order the state to develop a new, valid, formula. On June 27, 1991, the court granted the Cities' motion for a preliminary injunction.
 
 
 5
 In response to that injunction, the State, which in the form of the California Department of Aging was a most willingly compliant defendant, submitted to the court a proposed IFF omitting the four challenged factors. Under the new IFF, each PSA's share of OAA funds depends on the size of its population that is over age 60 in each of four categories: (1) non-minority, (2) low-income, (3) geographically isolated, and (4) minority.
 
 
 6
 Four groups--all representing predominantly rural PSAs--sought and were granted leave to intervene. Area 1 Agency on Aging, et al. (Area 1), Jovenes de Antano, Inc., et al. (Antano), and Ramona Dario and Manuel Avila (Dario) intervened as defendants, arguing that no permanent injunction should issue because the enjoined factors all were valid. Maria Blanco, et al. (Blanco) intervened as a plaintiff, requesting that the court modify its preliminary injunction to require the State's new formula to include a factor for geographic isolation. At the time Blanco moved to intervene, however, the State's proposed formula already included a geographic isolation factor. Kern County also intervened, but is not a participant in any of these appeals.
 
 
 7
 After additional briefing and hearings, the district court entered a permanent injunction enjoining the State from using the four factors challenged by the Cities and requiring the State to "give preference" to geographic isolation in its IFF, the factor urged by the Blanco intervenors. The order also contained a finding that the formula proposed by the State was valid under the Act.
 
 
 8
 The Cities and virtually all of the intervenors appealed.
 
 DISCUSSION
 
 9
 * Events have largely overtaken this litigation. After the district court issued its injunction, Congress amended the Older Americans Act and for the first time explicitly conditioned a state's receipt of federal funds on the approval of its IFF by the Assistant Secretary of Health and Human Services for Aging (the Secretary). See 42 U.S.C. Secs. 3024(c) & 3027(b)(1) (1992). The State is currently operating under an IFF that is subject to that amendment. The four factors to which the Cities objected are not part of the present plan, have never been approved by the Secretary, and are most unlikely ever to be so approved. If the four factors are illegal, as the Cities contend, and the State were to attempt to add any of them to the formula, it would first have to obtain the Secretary's approval. See 45 C.F.R. Sec. 1321.19; 42 U.S.C. Secs. 3024(c) & 3025(a)(2)(D). No doubt the Secretary could mistakenly approve an IFF containing illegal factors. However, in determining whether there is a continuing threat to the Cities' interests, we must assume that the Secretary will interpret the law correctly and obey it. Cf. E.P.A. v. Nat'l Crushed Stone Ass'n, 449 U.S. 64, 83, 101 S.Ct. 295, 307, 66 L.Ed.2d 268 (1980) (interpretation of statute by agency charged with its enforcement must be accorded great deference). The 1992 amendments to the Act plainly give the Secretary, not the courts, primary responsibility for assuring that state IFFs conform to the Act's requirements as a condition of receiving federal funds. Until the State submits to the Secretary a proposed formula containing the challenged factors, and until the Secretary takes the unlikely action of approving that formula, the threat of injury to the Cities' interests is too speculative to be legally cognizable.
 
 
 10
 Ordinarily, voluntary cessation of challenged activity will not render a claim moot. See Vitek v. Jones, 445 U.S. 480, 487, 100 S.Ct. 1254, 1260-61, 63 L.Ed.2d 552 (1980). But when there is no reasonable expectation that the alleged violation will recur, and interim relief or events have eradicated the effects of the alleged violation, the case is moot and our jurisdiction abates. See County of Los Angeles v. Davis, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979). Here, Congress has changed the scheme for approving a State's IFF, and the State has put an IFF in place that omits the factors challenged by the Cities and includes that sought by the Blanco intervenor. We conclude that the case is moot because there is "no reasonable expectation" that the challenged practices--if invalid--will be reinstated. Id.; Oregon Nat. Res. Council, Inc. v. Grossarth, 979 F.2d 1377, 1379-80 (9th Cir.1992). Accordingly, the Cities' complaint seeking (and securing) an injunction against the State is moot. See id.[2]
 
 
 11
 The appeals of the intervenor/defendants Dario, Area 1, and Antano are similarly moot, because they attack the district court's injunction against use of the four factors. Removal of the court's injunction will do nothing to reinstate the four factors because they have not been, and almost certainly will not be, approved by the Secretary. Finally, Blanco's complaint in intervention, requesting an injunction requiring the State to include that factor in any IFF, is moot as well, because the IFF currently in place already includes a factor for geographic isolation. That component cannot be removed without the Secretary's approval, an unlikely event if, as Blanco contends, its inclusion is required by law.
 
 
 12
 Accordingly, we dismiss the appeals of all of the appellant intervenors as moot, vacate the injunction of the district court prohibiting use of the four factors and requiring use of the geographic isolation factor, and instruct the district court to dismiss those claims as moot. See United States v. Munsingwear, 340 U.S. 36, 39, 71 S.Ct. 104, 106, 95 L.Ed. 36 (1950).
 
 II
 
 13
 The Cities also challenge the district court's finding that the formula proposed by the State is valid under the Act. The Cities evidently believe that the weights assigned to various factors must be adjusted so that an even greater percentage of OAA funds is distributed according to the low-income and minority factors.[3] We conclude that in challenging the weights assigned to various factors in California's IFF, the Cities do not state a claim for which relief can be granted under section 1983.
 
 
 14
 The Act does not require that any particular percentage of OAA funds be directed toward any particular group. It requires only that the IFF "take into account" (a) the distribution of older individuals in the state, and (b) the distribution of older individuals in greatest economic and social need with particular attention to low income minority older individuals. 42 U.S.C. Sec. 3025(a)(2)(C).[4] California's new IFF does exactly this.[5] Distribution of OAA funds is based on consideration of four variables: the population in each PSA that is (1) non-minority and over age 60, (2) low-income, (3) geographically isolated, and (4) minority. The low-income factor takes account of economic needs. The geographic isolation and minority factors take account of social needs.[6] And the non-minority-and-over-age-60 factor takes account of the geographic distribution of older individuals within the state. Furthermore, the formula gives greater weight to minority and low-income populations thereby giving them "particular attention."
 
 
 15
 Beyond the vague requirements that the IFF "take into account" or pay "particular attention" to certain categories of older individuals, the Act provides no guidance as to how these phrases should be translated into specific percentages in any IFF. There are no judicially manageable standards here. The Cities' attempt to find additional support for their position in 42 U.S.C. Sec. 3035(a)(2)(E) is misplaced. This section provides that the state must give assurances that:
 
 
 16
 preference will be given to providing services to older individuals with greatest economic need and older individuals with greatest social need, with particular attention to low-income minority individuals, and include proposed methods of carrying out the preferences in the State plan.
 
 
 17
 This section, however, does not set out requirements concerning the content of a state's IFF; it concerns the state plan, generally. In any event, the current IFF assigns greater weights to factors relating to the categories of individuals specified in section 3025(a)(2)(E) than it assigns to other categories of individuals. These groups therefore are "given preference." The Act does not require more.
 
 
 18
 We conclude that the Act leaves the State with the discretion, within the broad limits described above and subject to the Secretary's approval, to determine the degree to which the IFF takes into account or reflects each mandated characteristic. In this circumstance, the Cities do not have a right, enforceable under section 1983, to challenge the weights assigned to the particular factors in the new IFF. See Suter v. Artist M., --- U.S. ----, ----, 112 S.Ct. 1360, 1368, 118 L.Ed.2d 1 (1992); cf. Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508-10, 110 S.Ct. 2510, 2517, 110 L.Ed.2d 455 (1990).[7] We accordingly remand this matter to the district court with instructions to dismiss the City's claim.
 
 ATTORNEY'S FEES
 
 19
 Pursuant to 42 U.S.C. Sec. 1988, the district court awarded the Cities $237,924 and Blanco $228,656 in attorney fees, and the State appeals. We review for abuse of discretion a district court's determination of fee awards under 42 U.S.C. Sec. 1988, Corder v. Gates, 947 F.2d 374, 377 (9th Cir.1991). We reverse the awards.[8]
 
 
 20
 * To qualify for an award of attorney's fees under section 1988, a plaintiff must be a "prevailing party" within the meaning of the statute. Farrar v. Hobby, Jr., --- U.S. ----, ----, 113 S.Ct. 566, 572, 121 L.Ed.2d 494 (1992). A plaintiff is a prevailing party only when (1) it wins on the merits of its claim, (2) the relief received materially alters the legal relationship between the parties by modifying the defendant's behavior, and (3) that relief directly benefits the plaintiff. Id. at ----, 113 S.Ct. at 573.[9]
 
 
 21
 It is undisputed that under the new IFF--that is, as a result of their suit--the Cities receive far less OAA money than they would receive were the old IFF still in effect. The State argues that this misfortune means that the Cities do not qualify as prevailing parties because they obtained no direct benefit from their suit, as required by Farrar. We agree.
 
 
 22
 The Cities insist that even though they are worse off monetarily, their "overriding concern was that the state enforce the OAA targeting requirements and eliminate the racially discriminatory factors that had been utilized for years...." Thus, because they obtained an injunction eliminating those factors, the Cities contend that they prevailed. However, in vindicating this general interest in having the government obey the law, the Cities derived no direct benefit. Cf. Warth v. Seldin, 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975) (no standing to sue to redress generalized grievance). In fact, they were harmed. Therefore, they are not a prevailing party for the purpose of awarding attorney's fees. Cf. Rhodes v. Stewart, 488 U.S. 1, 4, 109 S.Ct. 202, 203-204, 102 L.Ed.2d 1 (1988) (per curiam) (plaintiff who won declaratory judgment that may have modified prison policies not entitled to attorney's fees when, at time court entered judgment, plaintiff already was out of prison).
 
 
 23
 This conclusion comports with the purpose behind section 1988. If, at the outset, the Cities had asserted only this generalized interest in having the government obey the law, they would not have had standing to bring this suit. See Warth, 422 U.S. at 499, 95 S.Ct. at 2205. Vindication of this interest, insufficient to confer standing on these plaintiffs, cannot justify a fee award to them. The purpose in awarding fees to section 1983 plaintiffs is to encourage lawsuits by plaintiffs with meritorious claims. See Woods v. Graphic Communications, 925 F.2d 1195, 1207 (9th Cir.1991). A claim that a plaintiff has no standing to assert is unmeritorious. Accordingly, awarding fees to the Cities, whose only success involved such a claim, would not be consistent with the purpose of section 1988.
 
 
 24
 Even were we to accept the Cities' interpretation of Farrar, and deem the Cities a prevailing party, we still would conclude that they are not entitled to attorney's fees. As Justice O'Connor observed in Farrar:
 
 
 25
 [E]ven if the exclusion's location is debatable [whether the issue of direct benefit goes to a plaintiff's status as prevailing party or to the size of the fee award], its effect is not: When the plaintiff's success is purely technical or de minimis, no fees can be awarded. Such a plaintiff either has failed to achieve victory at all, or has obtained only a pyrrhic victory for which the reasonable fee is zero.
 
 
 26
 --- U.S. at ----, 113 S.Ct. at 576 (O'Connor, J., concurring). The Cities' "victory" can only be described as pyrrhic.B
 
 
 27
 We similarly conclude that Blanco is not a prevailing party within the meaning of section 1988. There is no doubt that the provision Blanco sought was inserted into the State's IFF. But section 1988 requires more. It requires that a plaintiff win relief on the merits that "materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." Farrar, --- U.S. at ----, 113 S.Ct. at 573 (emphasis added). Because the State proposed a formula containing a geographic isolation factor before Blanco intervened, and because there is no evidence in the record that the State ever threatened to implement an IFF lacking a factor for geographic isolation or its equivalent, the injunction did not materially alter the legal relationship between Blanco and the State; it did not affect the State's behavior toward her. Blanco obtained no direct benefit from the injunction, because the behavior enjoined was not occurring at the time the injunction issued, nor was there any imminent threat of its occurrence. Accordingly, we conclude that Blanco is not a prevailing party within the meaning of section 1988. See Farrar, --- U.S. at ----, ----, 113 S.Ct. at 573, 576 (O'Connor, J., concurring); see also Texas State Teachers Ass'n v. Garland Independent Sch. Dist., 489 U.S. 782, 792, 109 S.Ct. 1486, 1493-94, 103 L.Ed.2d 866 (1989); Rhodes v. Stewart, 488 U.S. 1, 3-4, 109 S.Ct. 202, 203-204, 102 L.Ed.2d 1 (1988) (per curiam).
 
 CONCLUSION
 
 28
 The complaints of the intervenors are moot in their entirety. The Cities' complaint is also in large part moot; to the extent that it is not moot, it fails to state a claim for relief cognizable under section 1983. Accordingly, we vacate the district court's injunction, and remand with instructions to dismiss the Cities' complaint and the complaints in intervention of all appealing intervenors. See Munsingwear, 340 U.S. at 39-40, 71 S.Ct. at 106-107.[10]
 
 
 29
 Because neither the Cities nor Blanco received any direct benefit from the injunction prior to its being mooted, neither is a prevailing party within the meaning of 42 U.S.C. Sec. 1988. Accordingly, we vacate the district court's award of attorney's fees to plaintiffs and intervenors. The State is entitled to costs in these appeals.
 
 
 30
 Nos. 92-56458, 92-56464, and 92-56468: VACATED AND REMANDED WITH DIRECTIONS TO DISMISS.
 
 
 31
 No. 93-56655: REVERSED.
 
 
 
 [1]
 The statute provides that the IFF must:
 [Take] into account
 (i) the geographical distribution of older individuals in the state; and
 (ii) the distribution among planning and service areas of older individuals with greatest economic need and older individuals with greatest social need, with particular attention to low-income minority older individuals.
 42 U.S.C. Sec. 3025(a)(2)(C). The implementing regulations partially mirror these requirements:
 The formula shall reflect the proportion among the planning and service areas of persons age 60 and over in greatest economic or social need with particular attention to low income minority individuals.
 
 
 [45]
 C.F.R. 1321.37(a)
 
 
 [2]
 Because the Act incorporates Title VI protections, see 45 C.F.R. Secs. 80.1-80.3 & App. A pt. 2 No. 26, the propriety of the district court's order barring use of the four challenged factors is moot whether it was based on the Act or on Title VI
 
 
 [3]
 The formula assigns weights to each of four factors:
 Factors Weight
----------------------------
Non-minority 60k 1.0
Low income 2.0
Geographic isolation 1.5
Minority 2.0
 To determine the amount of money allocated to a given PSA, the PSA's population corresponding to each factor is multiplied by the factor's weight to give a weighted population. The weighted populations for all factors are added together to give the PSA's total weighted population. This total weighted population is expressed as a percentage of the combined weighted populations of all PSAs. The PSA is allocated this percentage of the total OAA funds available in the state.
 Thus, for example, an urban PSA composed entirely of 1,000 low-income minority individuals would receive four times as much OAA money as an urban PSA composed entirely of non-low-income, non-minority individuals.
 
 
 [4]
 The implementing regulations are no clearer, requiring that the IFF "reflect" these factors. See 45 C.F.R. Sec. 1321.37(a)
 
 
 [5]
 Our statement that the present plan complies with the OAA, like the similar statement of the district court, is not to be taken as binding on the Secretary in future decisions regarding the adequacy of the State's IFF. Approval of the State's IFF, as we have said, is the primary responsibility of the Secretary. Our holding is limited to rejecting the Cities' legal challenges to the present IFF
 
 
 [6]
 See 42 U.S.C. Sec. 3002(30) (defining "greatest social need")
 
 
 [7]
 The Cities also contend that the new IFF violates Title VI. However, their argument on appeal consists solely of two conclusory allegations to this effect, and a citation to certain pleadings below. Their briefs fail to inform us whether their Title VI claim is premised on an intentional discrimination theory or a discriminatory impact theory. Nor do they specify what aspects of the current IFF are objectionable. Consequently, the issue is not properly raised on appeal. See United Food & Comm. Workers v. Food Employers Council, Inc., 827 F.2d 519, 522 n. 2 (9th Cir.1989); Fed.R.App.Proc. 28(a)(4); Circuit Rule 28-3.2
 
 
 [8]
 Mootness is not the ground of our ruling on attorney's fees. That a decision favorable to a section 1983 plaintiff is later vacated as moot does not alter the plaintiff's status as a prevailing party provided the plaintiff achieved that status before the case was rendered moot. See, e.g., Williams v. Alioto, 625 F.2d 845, 847-48 (9th Cir.1980), cert. denied, 450 U.S. 1012, 101 S.Ct. 1723, 68 L.Ed.2d 213 (1981)
 
 
 [9]
 Contrary to the Cities' assertion, Farrar does not hold that whether the plaintiff achieved any direct benefit from the litigation is irrelevant to its status as a prevailing party. It holds only that as long as the plaintiff achieved some benefit, no matter how small, it is a prevailing party. See Farrar, --- U.S. at ----, 113 S.Ct. at 574 ("the degree of the plaintiff's success does not affect eligibility for a fee award") (citations and quotations omitted)
 
 
 [10]
 Section 9313.5(a) of the California Welfare and Institutions code provides that changes to the State's IFF can be made only by the state legislature. Because section 9315, which requires use of the four challenged factors, has not been amended or repealed, the Cities maintain that if we vacate the district court's injunction, the CDA will be obliged to alter the IFF currently in use to conform to section 9315. This concern is misplaced. The district court's injunction did nothing to change the legal relationship between the CDA and the state legislature, and vacating that injunction also does nothing to alter that relationship. In any event, irrespective of this relationship, California may not implement an IFF different from the one now in place without the Secretary's approval, as discussed above
 We note, moreover, that even if the CDA is violating California law by distributing funds according to an IFF not approved by the state legislature, we lack jurisdiction to remedy that violation. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 121, 104 S.Ct. 900, 919, 79 L.Ed.2d 67 (1984).