# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

LOG CABIN REPUBLICANS, a non-profit corporation,
                    *Plaintiff-Appellee,*

v.

UNITED STATES OF AMERICA; LEON PANETTA, Secretary of Defense, in his official capacity,
                    *Defendants-Appellants.*

No. 10-56634

D.C. No.
2:04-cv-08425-VAP-E

LOG CABIN REPUBLICANS, a non-profit corporation,
                    *Plaintiff-Appellant,*

v.

UNITED STATES OF AMERICA; LEON PANETTA, Secretary of Defense, in his official capacity,
                    *Defendants-Appellees.*

No. 10-56813

D.C. No.
2:04-cv-08425-VAP-E

OPINION

Appeal from the United States District Court
for the Central District of California
Virginia A. Phillips, District Judge, Presiding

Argued and Submitted
September 1, 2011—Pasadena, California

Filed September 29, 2011

Before: Arthur L. Alarcón, Diarmuid F. O'Scannlain, and
Barry G. Silverman, Circuit Judges.

18571

Per Curiam Opinion;
Concurrence by Judge O'Scannlain

## COUNSEL

Henry C. Whitaker, Attorney, Appellate Staff, Civil Division, United States Department of Justice, Washington, D.C., argued the cause and filed the briefs for the defendants-appellants/defendants-appellees. With him on the briefs were Tony West, Assistant Attorney General, André Birotte Jr., United States Attorney, and Anthony J. Steinmeyer and August E. Flentje, Attorneys, Appellate Staff, Civil Division, United States Department of Justice, Washington, D.C.

Dan Woods, White & Case LLP, Los Angeles, California, argued the cause and filed a brief for the plaintiff-appellee/plaintiff-appellant. With him on the brief was Earle Miller, Aaron A. Kahn, and Devon A. Myers, White & Case LLP, Los Angeles, California.

**OPINION**

PER CURIAM:

We are called upon to decide whether the congressionally enacted "Don't Ask, Don't Tell" policy respecting homosexual conduct in the military is unconstitutional on its face.

I

A

In 1993, Congress enacted the policy widely known as Don't Ask, Don't Tell. The policy generally required that a service member be separated from the military if he had engaged or attempted to engage in homosexual acts, stated that he is a homosexual, or married or attempted to marry a person of the same sex. 10 U.S.C. § 654(b) (repealed); *see, e.g.*, Dep't of Def. Instructions 1332.14, 1332.30 (2008).

The nonprofit corporation Log Cabin Republicans brought this suit in 2004, challenging section 654 and its implementing regulations as facially unconstitutional under the due process clause of the Fifth Amendment, the right to equal protection guaranteed by that Amendment, and the First Amendment right to freedom of speech. Log Cabin sought a declaration that the policy is facially unconstitutional and an injunction barring the United States from applying the policy. The district court dismissed the equal protection claim under *Witt v. Department of the Air Force*, 527 F.3d 806 (9th Cir. 2008) (upholding section 654 against a facial equal protection challenge), but allowed the due process and First Amendment challenges to proceed to trial.

After a bench trial, in October 2010 the district court ruled that section 654 on its face violates due process and the First Amendment. The court permanently enjoined the United States from applying section 654 and its implementing regula-

tions to anyone. The United States appealed; Log Cabin cross-appealed the dismissal of its equal protection claim.

B

While the appeal was pending, Congress enacted the Don't Ask, Don't Tell Repeal Act of 2010, Pub. L. No. 111-321, 124 Stat. 3515 (2010) ("Repeal Act"). That statute provides that section 654 would be repealed 60 days after: (1) the Secretary of Defense received a report determining the impact of repealing section 654 and recommending any necessary changes to military policy, and (2) the President, Secretary of Defense, and Chairman of the Joint Chiefs of Staff certified that they had considered the report's recommendations and were prepared to implement the repeal consistent with military readiness, military effectiveness, and unit cohesion. Repeal Act § 2(b). The Repeal Act left section 654 in effect until the prerequisites to repeal were satisfied and 60 days had then passed.

The report was issued November 30, 2010, and certification occurred July 21, 2011. Section 654 was thus repealed September 20, 2011.

II

A

**[1]** Because section 654 has now been repealed, we must determine whether this case is moot. "[I]t is not enough that there may have been a live case or controversy when the case was decided by the court whose judgment" is under review. *Burke v. Barnes*, 479 U.S. 361, 363 (1987). Article III of the United States Constitution "requires that there be a live case or controversy at the time that" a reviewing federal court decides the case. *Id.*

**[2]** Applying that limitation, the Supreme Court and our court have repeatedly held that a case is moot when the chal-

lenged statute is repealed, expires, or is amended to remove the challenged language. In determining whether a case has become moot on appeal, the appellate court "review[s] the judgment below in light of the . . . statute as it now stands, not as it . . . did" before the district court. *Hall v. Beals*, 396 U.S. 45, 48 (1969) (per curiam); *see Burke*, 479 U.S. at 363.

In *Hall v. Beals*, for example, the Supreme Court deemed moot a challenge to a six-month residency requirement imposed by Colorado for eligibility to vote in the 1968 presidential election. 396 U.S. at 46-48. After the district court rejected the challenge and the Supreme Court noted probable jurisdiction, the Colorado legislature reduced the residency requirement to two months, which the plaintiffs would have met at the time of the 1968 election. *Id.* at 47-48. The case was moot because, "under the statute as . . . written" when the Supreme Court reviewed the district court's judgment, "the appellants could have voted in the 1968 presidential election." *Id.* at 48. Similarly, in *United States Department of the Treasury v. Galioto*, after the Supreme Court had noted probable jurisdiction to review a ruling that federal firearms legislation unconstitutionally singled out mental patients, the case became moot because Congress amended the statute to remove the challenged language. 477 U.S. 556, 559-60 (1986). And in *Burke v. Barnes*, where several congressmen challenged the President's attempt to "pocket-veto" a bill, the Supreme Court deemed the case moot because the bill expired by its own terms before the Court could rule on the case. 479 U.S. at 363. As in cases dealing with repealed legislation, the Court "analyze[d] th[e] case as if [the plaintiffs] had originally sought to litigate the validity of a statute which by its terms had already expired." *See id.*

**[3]** Following the Court's lead, we have routinely deemed cases moot where "a new law is enacted during the pendency of an appeal and resolves the parties' dispute." *Qwest Corp. v. City of Surprise*, 434 F.3d 1176, 1181 (9th Cir. 2006) (Qwest's challenge to ordinances rendered moot by amend-

ment exempting Qwest from ordinances); *see Chem. Producers & Distribs. Ass'n v. Helliker*, 463 F.3d 871, 875-78 (9th Cir. 2006) (case moot where amendment eliminated challenged part of pesticide registration law); *Martinez v. Wilson*, 32 F.3d 1415, 1419-20 (9th Cir. 1994) (case moot where, after injunction was issued, statute was amended to eliminate challenged factors used by the State of California in distributing funds under the Older Americans Act). Under these precedents, when a statutory repeal or amendment gives a plaintiff "everything [it] hoped to achieve" by its lawsuit, the controversy is moot. *Helliker*, 463 F.3d at 876.

**[4]** This suit became moot when the repeal of section 654 took effect on September 20. If Log Cabin filed suit today seeking a declaration that section 654 is unconstitutional or an injunction against its application (or both), there would be no Article III controversy because there is no section 654. The repeal, in short, gave Log Cabin "everything" its complaint "hoped to achieve." *Helliker*, 463 F.3d at 876. There is no longer "a present, live controversy of the kind that must exist" for us to reach the merits. *Hall*, 396 U.S. at 48.

B

Log Cabin concedes that "the injunctive relief awarded by the district court [has] become moot" due to the repeal, but contends that its quest for declaratory relief is live under either of two exceptions to mootness.

We are not persuaded. When a statutory repeal or amendment extinguishes a controversy, the case is moot. There is no exception for declaratory relief. *See Native Vill. of Noatak v. Blatchford*, 38 F.3d 1505, 1514 (9th Cir. 1994) ("Declaratory relief is unavailable where [a] claim is otherwise moot . . . ."); *Pub. Utils. Comm'n of State of Cal. v. FERC*, 100 F.3d 1451, 1459 (9th Cir. 1996) (same).

In any event, no exception to mootness applies here. Log Cabin notes that generally "a defendant's voluntary cessation

of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982). But voluntary cessation is different from a statutory amendment or repeal. Repeal is "usually enough to render a case moot, even if the legislature possesses the power to reenact the statute after the lawsuit is dismissed." *Helliker*, 463 F.3d at 878. Cases rejecting mootness in such circumstances "are rare and typically involve situations where it is virtually certain that the repealed law will be reenacted." *Id.* (emphases omitted); *see, e.g.*, *City of Mesquite*, 455 U.S. at 289 & n.11 (City admitted that it intended to reenact "precisely the same provision" that it had repealed after the district court's adverse judgment); *Ballen v. City of Redmond*, 466 F.3d 736, 741 (9th Cir. 2006) (statutory amendment "adopted only as an interim regulation in response to the district court's summary judgment ruling"); *Coral Constr. Co. v. King Cnty.*, 941 F.2d 910, 928 (9th Cir. 1991) (district court had upheld the challenged ordinance, allowing the County to "reenact its earlier ordinance" "without the spectre of a prior finding of unconstitutionality").

We cannot say with "virtual[ ] certain[ty]," *Helliker*, 463 F.3d at 878, that the Congress that passed the Repeal Act—or a future Congress whose composition, agenda, and circumstances we cannot know—will reenact Don't Ask, Don't Tell. We can only speculate, and our speculation cannot breathe life into this case.

A second exception to mootness applies when a party faces "collateral consequences" from a challenged statute even when the statute is repealed. Log Cabin cites several benefits that discharged service members may have lost as a result of their separation. But because these missed benefits are not legal penalties from past conduct, they do not fall within this exception. *Qwest*, 434 F.3d at 1182; *Pub. Utils. Comm'n*, 100 F.3d at 1461 ("the collateral consequences must be *legal*").

III

Having determined that this case is moot, we must "direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances." 28 U.S.C. § 2106.

**[5]** The "established" practice when a civil suit becomes moot on appeal is to vacate the district court's judgment and remand for dismissal of the complaint. *See United States v. Munsingwear, Inc.*, 340 U.S. 36, 39 (1950). Vacatur ensures that "those who have been prevented from obtaining the review to which they are entitled [are] not . . . treated as if there had been a review." *Id.* It "prevent[s] an unreviewable decision 'from spawning any legal consequences,' so that no party is harmed by what [the Supreme Court has] called a 'preliminary' adjudication." *Camreta v. Greene*, 131 S. Ct. 2020, 2035 (2011) (quoting *Munsingwear*, 340 U.S. at 40-41).

To be sure, in the rare situation "when mootness [does] not deprive the appealing party of any review to which [it] was entitled," reviewing courts have left lower court decisions intact. *Camreta*, 131 S. Ct. at 2035 n.10. Vacatur thus may be unwarranted when the losing party did not file an appeal or settled the case. *See id.* (citing *Karcher v. May*, 484 U.S. 72, 83 (1987), and *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 25 (1994)). In each circumstance, the losing party "voluntarily forfeit[s] his legal remedy by the ordinary process[ ] of appeal" and thus "surrender[s] his claim to the equitable remedy of vacatur." *U.S. Bancorp*, 513 U.S. at 25.

**[6]** That is not the situation before us. The United States did not forfeit the appellate review to which it was entitled. After the district court entered its judgment and injunction, the United States appealed promptly, moved our court to stay the district court order, filed two merits briefs disputing the judgment and relief ordered, moved to reinstate the stay of the

injunction after this court briefly lifted it, filed a letter brief reiterating its arguments against the district court's judgment and injunction, and at oral argument made clear that it still advances all of its arguments against the district court's judgment and injunction. Mootness has thus deprived the United States of the review to which it is entitled. Vacatur is proper. *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 74 (1997) (holding that vacatur was proper because, "when the mooting event occurred," the Arizona Attorney General was pursuing his "right to present argument on appeal").

**[7]** We therefore vacate the judgment of the district court. *Burke*, 479 U.S. at 365 (vacating and remanding to dismiss complaint); *Helliker*, 463 F.3d at 880 (same); *Martinez*, 32 F.3d at 1420. Because Log Cabin has stated its intention to use the district court's judgment collaterally, we will be clear: It may not. Nor may its members or anyone else. We vacate the district court's judgment, injunction, opinions, orders, and factual findings—indeed, all of its past rulings—to clear the path completely for any future litigation. Those now-void legal rulings and factual findings have no precedential, preclusive, or binding effect. The repeal of Don't Ask, Don't Tell provides Log Cabin with all it sought and may have had standing to obtain. (We assume without deciding that Log Cabin had standing to seek a declaration that section 654 is unconstitutional and an injunction barring the United States from applying it to Log Cabin's members. *See Arizonans for Official English*, 520 U.S. at 66-67 (court may assume without deciding that standing exists in order to analyze mootness).) Because the case is moot and the United States may not challenge further the district court's rulings and findings, giving those rulings and findings any effect would wrongly harm the United States.[1]

---

[1]In light of our disposition, we deny the United States' Suggestion of Mootness and Motion to Vacate the District Court Judgment filed September 20, 2011.

On remand, the district court will dismiss the complaint forthwith.

VACATED AND REMANDED WITH DIRECTIONS TO DISMISS.

---

O'SCANNLAIN, Circuit Judge, concurring specially:

I fully concur in the court's opinion. The repeal of Don't Ask, Don't Tell has mooted this case, and our opinion properly vacates the district court's judgment, injunction, rulings, and findings.

I write separately because our inability to reach the merits may leave uncertainty about the role *Lawrence v. Texas*, 539 U.S. 558 (2003), may have in substantive due process challenges. Although Congress spared us the need to reach the merits in this case, other such challenges will come to the courts. Because "guideposts for responsible decisionmaking" on matters of substantive due process are "scarce and open ended," *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992), I think it useful to explain how courts should approach the application of *Lawrence* in appropriate cases.

I

The Supreme Court has emphasized its "reluctan[ce] to expand the concept of substantive due process." *Collins*, 503 U.S. at 125. To confine that concept to its proper bounds, the Court has developed an "established method" of substantive due process analysis that comprises two primary features. *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997).

First, the Court requires "a 'careful description' of the asserted fundamental liberty interest." *Glucksberg*, 521 U.S. at 721; *see Reno v. Flores*, 507 U.S. 292, 302 (1993); *Collins*,

503 U.S. at 125. In crafting such descriptions, the Court has eschewed breadth and generality in favor of narrowness, delicacy, and precision.

In *Washington v. Glucksberg*, for example, the Court framed the issue before it as "whether the 'liberty' specially protected by the Due Process Clause includes a right to commit suicide which itself includes a right to assistance in doing so." 521 U.S. at 723. The Court rejected capacious formulations of the asserted right, such as "the right to choose a humane, dignified death" or "the liberty to shape death." *Id.* at 722 (internal quotation marks omitted). Similarly, in *Cruzan v. Director, Missouri Department of Health*, the Court formulated the interest at stake as a "right to refuse lifesaving hydration and nutrition," 497 U.S. 261, 279 (1990), rather than as a "right to die." So too in *Reno v. Flores*, where the Court described the interest at issue as "the alleged right of a child who has no available parent, close relative, or legal guardian, and for whom the government is responsible, to be placed in the custody of a willing-and-able private custodian rather than of a government-operated or government-selected child-care institution." 507 U.S. at 302. Again, the Court rejected more general articulations of the alleged right, such as "the 'freedom from physical restraint' " and "the right to come and go at will." *Id.*

Second, the Court examines whether that carefully described right is "deeply rooted" in our Nation's history, legal traditions, and practices or in supporting case law. *Glucksberg*, 521 U.S. at 721 (internal quotation marks omitted); *see Collins*, 503 U.S. at 126-29 (examining "the text [and] history of the Due Process Clause"); *Cruzan*, 497 U.S. at 269-77 (examining the common law and contemporary case law); *see also Flores*, 507 U.S. at 303 (observing that no court had ever held that there was a constitutional right of the sort alleged). In *Glucksberg*, for example, the Court examined those sources for evidence of "a right to commit suicide with another's assistance." 521 U.S. at 724; *see id.* at 710-19,

723-28. Coming up empty-handed, the Court concluded that this "asserted 'right' . . . is not a fundamental liberty interest protected by the Due Process Clause." *Id.* at 728.

The Court has imposed these dual limitations on substantive due process analysis to preserve the judiciary's proper role in the constitutional structure. "[E]xtending constitutional protection to an asserted right or liberty interest . . . to a great extent[ ] place[s] the matter outside the arena of public debate and legislative action." *Glucksberg*, 521 U.S. at 720. Whenever the Court expands the concept of substantive due process, moreover, it risks "subtly transform[ing]" the liberty protected by the due process clause to "the policy preferences of the Members of th[e] Court." *Id.*

In short, when confronted with assertions of new fundamental rights, rather than invite innovation the Court has counseled caution. The Court has developed a trusted method reflecting that caution. And while the Court has on occasion departed from its established method, it has not licensed lower courts to do so. *See Witt v. Dep't of Air Force*, 548 F.3d 1264, 1273 (9th Cir. 2008) (O'Scannlain, J., dissenting from denial of rehearing en banc). Most important, when a right is not rooted in our constitutional text, traditions, or history, our authority as judges is at its end. We must then leave the task of identifying and protecting new rights where the Constitution leaves it—with the political branches and the people. *See Glucksberg*, 521 U.S. at 720.

II

A

Against this established legal background, the district court in this case reasoned as follows: Fundamental rights trigger heightened judicial scrutiny. *Log Cabin Republicans v. United States*, 716 F. Supp. 2d 884, 911 (C.D. Cal. 2010). *Lawrence v. Texas* "recogniz[ed] the fundamental right to 'an autonomy

of self that includes freedom of thought, belief, expression, and certain intimate conduct.' " *Id.* (quoting 539 U.S. at 562). Log Cabin's challenge to Don't Ask, Don't Tell implicates that same fundamental right. *Id.* Therefore, Don't Ask, Don't Tell must withstand heightened scrutiny. *Id.*

This is not the "established method" of substantive due process analysis. Indeed, this analysis was tantamount to a conclusion that the Supreme Court in *Lawrence* rejected its own settled approach and established a sweeping fundamental right triggering heightened scrutiny regardless of context. On that unsupported foundation, the district court subjected 10 U.S.C. § 654 to heightened scrutiny.

The Supreme Court's cases instruct that departures from the constitutional text must be narrow, carefully considered, and grounded in the Nation's history, traditions, or practices. *See supra* Part I. The district court's decision followed none of those instructions. Departing from settled practice was particularly improper in this case, which involved a facial constitutional challenge to a federal statute. Judging the constitutionality of an Act of Congress is "the gravest and most delicate duty" that federal courts are called upon to perform. *Rostker v. Goldberg*, 453 U.S. 57, 64 (1981) (internal quotation marks omitted). Proper respect for Supreme Court precedents, for a considered congressional policy, and for the traditions and history of our country required the district court to apply the tried and trusted method of substantive due process analysis.

B

Log Cabin's due process challenge required the district court to begin by "carefully formulating the interest at stake." *Glucksberg*, 521 U.S. at 722. Because Log Cabin alleged that 10 U.S.C. § 654 violates substantive due process, this first step calls for examining the statutory language, *see Glucks-*

*berg*, 521 U.S. at 723.[1] Taking close account of that language, a substantive due process challenge to section 654 presented the question whether the due process clause protects the right of a member of the armed forces to do any of the following without being discharged: (1) to engage in, to attempt to engage in, or to solicit another to engage in homosexual acts

---

[1]As relevant, section 654 provided:

A member of the armed forces shall be separated from the armed forces under regulations prescribed by the Secretary of Defense if one or more of the following findings is made and approved in accordance with procedures set forth in such regulations:

(1) That the member has engaged in, attempted to engage in, or solicited another to engage in a homosexual act or acts unless there are further findings, made and approved in accordance with procedures set forth in such regulations, that the member has demonstrated that—

(A) such conduct is a departure from the member's usual and customary behavior;

(B) such conduct, under all the circumstances, is unlikely to recur;

(C) such conduct was not accomplished by use of force, coercion, or intimidation;

(D) under the particular circumstances of the case, the member's continued presence in the armed forces is consistent with the interests of the armed forces in proper discipline, good order, and morale; and

(E) the member does not have a propensity or intent to engage in homosexual acts.

(2) That the member has stated that he or she is a homosexual or bisexual, or words to that effect, unless there is a further finding, made and approved in accordance with procedures set forth in the regulations, that the member has demonstrated that he or she is not a person who engages in, attempts to engage in, has a propensity to engage in, or intends to engage in homosexual acts.

(3) That the member has married or attempted to marry a person known to be of the same biological sex.

10 U.S.C. § 654(b).

without demonstrating that such conduct is (to simplify for brevity) unusual for the service member, uncoerced, and non-disruptive to the military; (2) to state that he is a homosexual or bisexual and also to engage in, to attempt to engage in, to have the propensity to engage in, or to intend to engage in homosexual acts; or (3) to marry or to attempt to marry a person known to be of the same biological sex. Put simply, the substantive due process question raised by Don't Ask, Don't Tell was whether a service member possesses a right to serve in the military when he is known to engage in homosexual conduct or when he states that he is a homosexual.

Having carefully described the asserted right, the next question is whether the right is manifested in our Nation's history, traditions, or practices. A trusted guide for this analysis is past decisions of the courts, which have repeatedly approved the very actions that Log Cabin contends are unconstitutional. As our court recognized in 1997, "[f]or nearly twenty years we have upheld the constitutionality of the military's authority to discharge service members who engage in homosexual acts." *Philips v. Perry*, 106 F.3d 1420, 1425 (9th Cir. 1997); *see id.* at 1425-27 (summarizing cases). Affirming a discharge under section 654 in *Philips*, we observed that "this court has consistently held that regulations of the nature at issue here . . . are constitutional" and noted that "[e]very other circuit to address this issue is in accord, upholding against constitutional challenge the authority of the military to discharge those members who engage in homosexual conduct." *Id.* at 1427 & n.12 (emphasis omitted) (citing decisions of the Second, Tenth, D.C., and Federal Circuits); *see, e.g.*, *Thomasson v. Perry*, 80 F.3d 915, 927-31, 934 (4th Cir. 1996) (en banc); *Dronenburg v. Zech*, 741 F.2d 1388, 1397-98 (D.C. Cir. 1984).

Courts have rejected such challenges on equal protection as well as due process grounds. *See, e.g.*, *Able v. United States*, 155 F.3d 628, 635-36 (2d Cir. 1998); *Richenberg v. Perry*, 97 F.3d 256, 260-62 (8th Cir. 1996)*; Steffan v. Perry*, 41 F.3d

677, 686-87 (D.C. Cir. 1994) (en banc); *Ben-Shalom v. Marsh*, 881 F.2d 454, 464-65 (7th Cir. 1989). Such equal protection decisions are instructive here: The mere focus on equal protection rather than on due process in such cases confirms that the right asserted here has not been viewed as part of the liberty protected by due process. *See Flores*, 507 U.S. at 303 ("The mere novelty of . . . a claim is reason enough to doubt that 'substantive due process' sustains it."). Moreover, "substantive due process and equal protection doctrine are intertwined for purposes of equal protection analyses of federal action" because the Fifth Amendment's equal protection guarantee is grounded in its due process clause. *Philips*, 106 F.3d at 1427 (internal quotation marks omitted).

These decisions, all of them recent by historical standards, span the Nation and belie any claim that the right asserted by Log Cabin is deeply rooted in our history or traditions. Indeed, "the alleged right certainly cannot be considered so rooted in the traditions and conscience of our people as to be ranked as fundamental" when no court had held (until the district court did here) that there is such a fundamental constitutional right. *Flores*, 507 U.S. at 303 (internal quotation marks omitted).

## C

The district court in this case never contended that the right asserted by Log Cabin has deep roots in our history, tradition, or practices, nor in a line of cases stretching an appreciable distance into the past. Rather, the linchpin for the district court's ruling was the Supreme Court's decision just eight years ago in *Lawrence*.

*Lawrence* held that the liberty interest protected by the due process clause prohibits states from criminalizing private homosexual conduct by consenting adults. 539 U.S. at 578. Nothing in *Lawrence* establishes a general fundamental right to engage in homosexual conduct. *See, e.g.*, *Muth v. Frank*,

412 F.3d 808, 817 (7th Cir. 2005) (“*Lawrence* . . . did not announce . . . a fundamental right, protected by the Constitution, for adults to engage in all manner of consensual sexual conduct . . . .”); *Lofton v. Sec’y of the Dep’t of Children & Family Servs.*, 358 F.3d 804, 817 (11th Cir. 2004) (“[I]t is a strained and ultimately incorrect reading of *Lawrence* to interpret it to announce a new fundamental right.”).

Indeed, far from establishing a broad interest, the Supreme Court in *Lawrence* struck down with marksman-like precision an outlier criminal statute and expressly emphasized the limitations of the liberty interest guiding its holding:

> The present case does not involve minors. It does not involve persons who might be injured or coerced or who are situated in relationships where consent might not easily be refused. It does not involve public conduct or prostitution. It does not involve whether the government must give formal recognition to any relationship that homosexual persons seek to enter.

539 U.S. at 578; *see Lofton*, 358 F.3d at 815 (“*Lawrence*’s holding was that substantive due process does not permit a state to impose a criminal prohibition on private consensual homosexual conduct.”). The case did not address the military context, did not establish a right to continued employment for those engaged in proscribed conduct, and did not address how homosexual conduct might be addressed outside a criminal context. The opinion does not prescribe heightened scrutiny. These limitations make clear that *Lawrence* does not establish that a member of the armed forces has a constitutionally protected right to engage in homosexual acts or to state that he or she is a homosexual while continuing to serve in the military.

To be sure, *Lawrence* contained broad language on personal autonomy. *See, e.g.*, 539 U.S. at 562 (“Liberty protects

the person from unwarranted government intrusions into a dwelling or other private places. . . . Liberty presumes an autonomy of self that includes freedom of thought, belief, expression, and certain intimate conduct."). But this broad language does not constitute "the careful[ ] formulation" of "the interest at stake" in this case and cannot, under Supreme Court precedent, be "transmuted" into the new fundamental right claimed by Log Cabin. *Glucksberg*, 521 U.S. at 722, 726. In the end, careful application of the Supreme Court's "established method" in substantive due process cases shows that *Lawrence* did not establish *any* fundamental right—let alone any right relevant to the Don't Ask, Don't Tell policy in the military.

D

Because *Lawrence* does not change the scrutiny applicable to policies regarding personnel decisions in the military, section 654 should have been upheld if it was "rationally related to legitimate government interests." *Glucksberg*, 521 U.S. at 728. When enacting section 654, Congress put forth the legitimate interests of military capability and success (among others), *see, e.g.*, 10 U.S.C. § 654(a)(6)-(7), (13)-(15), and Congress could have rationally concluded that the statute served that interest, as reflected in the considerable evidence before it, *see Philips*, 106 F.3d at 1422-23; *Thomasson*, 80 F.3d at 922-23. If we had been able to reach the merits in this case, I would have been obliged to vote to reverse.[2]

---

[2]So too for the district court's holding that Don't Ask, Don't Tell on its face violates the First Amendment. I do not address this ruling at length because it was little more than a follow-on to the district court's due process ruling. The district court's substantive due process analysis focused on section 654(b)(1), which concerns homosexual acts, whereas its First Amendment analysis looked to section 654(b)(2), which concerns statements made by service members. The district court concluded that if the "acts prong" in section 654(b)(1) violates substantive due process, then the limitation on speech in section 654(b)(2) "necessarily fails as well" under the First Amendment because that provision limits speech in support of an

III

"[J]udicial self-restraint requires" federal courts "to exercise the utmost care whenever we are asked to break new ground" in the field of substantive due process. *Flores*, 507 U.S. at 302 (internal quotation marks omitted). This note of caution is especially important in cases such as this one, where moral and personal passions run high and where there is great risk that "the liberty protected by the Due Process Clause [will] be subtly transformed into the policy preferences" of unelected judges. *Glucksberg*, 521 U.S. at 720. The Constitution entrusts to "public debate and legislative action" the task of identifying and protecting rights that are not rooted in our constitutional text, history, or traditions. *Id.* This case involves precisely such a right, and legislative action achieved the goals pursued in this lawsuit. That was the proper resolution: although Log Cabin had every right to bring this suit, only Congress—not the courts—had the authority under our Constitution to vindicate Log Cabin's efforts here.

---

unconstitutional objective. 716 F. Supp. 2d at 926. As already explained, in my view the substantive due process challenge could not have succeeded here.

Moreover, the district court's ruling squarely conflicted with our own decision just fourteen years ago in *Holmes v. California Army National Guard*, which rejected the argument that section 654(b)(2) violates the First Amendment. 124 F.3d 1126, 1136 (9th Cir. 1997). The district court believed that *Holmes*'s "foundations . . . all have been undermined by *Lawrence*," 716 F. Supp. 2d at 926, even though *Lawrence* did not involve the First Amendment and did not even transform the doctrine it *did* involve (due process). *Lawrence* could hardly be taken to undermine the established principle that the First Amendment does not prohibit the use of speech as evidence of the facts admitted. *See Holmes*, 124 F.3d at 1136. Because section 654(b)(1) has a plainly legitimate sweep, section 654(b)(2) may constitutionally be used to identify those within that sweep. *See Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 n.6 (2008) (First Amendment facial challenge requires a showing that "a substantial number of [the challenged statute's] applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep") (internal quotation marks omitted).

In this highly charged area, we constitutionally inferior courts should be careful to apply established law. Failure to do so begets the very errors that plagued this case. That failure culminated in a ruling that invalidated a considered congressional policy and imposed a wholly novel view of constitutional liberty on the entire United States. The Supreme Court's cases tell us to exercise greater care, caution, and humility than that. Indeed, our constitutional system demands more respect than that. When judges sacrifice the rule of law to find rights they favor, I fear the people may one day find that their new rights, once proclaimed so boldly, have disappeared because there is no longer a rule of law to protect them.